GREENWALD, INC., ET AL., *v.* MINNIE POWDER-MAKER.
[No. 30, January Term, 1936.]

174

*Decided February 20th, 1936.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*Joseph T. England* and *Julius F. Sandrock,* for the appellants.

*G. C. A. Anderson,* with whom were *Keech, Carman, Tucker & Anderson* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

In this workmen's compensation case, the claimant is the widow of Louis Powdermaker, who was killed, on May 29th, 1933, in a collision between his automobile and a street railway car on Liberty Heights Avenue in Baltimore. At the time of the accident, and for many years, Mr. Powdermaker was employed as a salesman by Greenwald, Inc., in its business of selling meat to retail dealers. It was his duty to visit such dealers and obtain orders for meat to be thereafter delivered. In that service he used his own automobile. According to the testimony in the record, he would customarily call

upon prospective customers during the forenoon and then return to his home, where he would communicate by telephone with his employer's office to learn the exact price quotations for the day, and also telephone customers in continuing and completing his sales negotiations. It was while he was homeward bound, about half past 11 o'clock in the morning, which was the usual time of his return with a view to using his telephone for the purposes just indicated, that he became involved in the accident which ended his life. The claim of his widow under the Workmen's Compensation Act (Code, art. 101, as amended) was sustained by the State Industrial Accident Commission, and its decision was affirmed, on the appeal of the employer and insurer, by the Court of Common Pleas of Baltimore city. On their further appeal to this court, the principal question to be determined is whether the evidence has a legally sufficient tendency to prove that the accidental and fatal injury to the claimant's husband was suffered in the course of his employment. That question was raised by a motion to reverse the order of the commission and by exceptions to rulings on the evidence and the prayers.

The testimony of the claimant as to her husband's customary activities as a salesman for Greenwald, Inc., was in part as follows:

"Q. What time would he leave the house? A. Any time between half past eight and nine o'clock. Q. Do you know where he went? A. Yes. Q. Where did he go and what did he do in the morning, do you know? A. Yes. After leaving the house he saw customers. Q. How long had he been doing that? A. For twenty or twenty-two years. * * * Q. About what time would he come home? A. At noon—any time between 11 and 12—mostly after 11 but it could happen at 11. * * * Q. After Mr. Powdermaker got home in the morning what would he do? A. Telephone. Q. Who would he phone to? A. Various customers. Q. How do you know that? A. I could hear him call up the A. & P. or Chicago Meat Market or any other meat markets or private small stores. Certainly I knew

it. Q. Have you any idea on an average how long he would use the telephone after he got home in the morning? A. About half an hour or longer. Always half an hour. * * * Q. Did he ever go down to the office in the morning. A. Never. Q. How do you know that? A. Well, if he wanted any information he phoned for that at the office. Q. When he got in around 11 o'clock in the morning, 11.10 or 11.30, did he ever call the office then? A. Yes. Q. Why would he call the office then? A. To get prices that he had offered on sales—to know whether he could accept those prices. Q. And then what would he do after he got the prices? A. Phone the customer whether it was accepted or not. * * * Q. Have you any idea how many customers he would call up every day when he came home in the morning? A. Possibly ten or less or more. I could not say how many people he could not see. Q. And then had to phone them every day for the last twenty years—that has been his regular custom? A. Yes. Q. And after he finished his phoning what would he do? A. Ate lunch. Q. And then what would he do? A. Telephone again and go. Q. Why did he come home to phone? Why didn't he phone somewhere else? A. It was the expense for one thing, and he could always reach the people on one phone. It was more convenient to phone at home than in a public phone. It was more private—therefore he came home. * * * Q. You know about what time this accident happened? A. 11.15. Q. How do you know that? A. Because I looked at the clock just before. Q. Did you see the accident? A. No. Q. Did you look and see Mr. Powdermaker just before that? A. Yes."

It was stipulated for the record that the accident occurred between 11.10 and 11.30 o'clock, when Mr. Powdermaker was within fifty feet of his home, and that his automobile and a street car of the United Railways & Electric Company were both proceeding westwardly on Liberty Heights Avenue and collided when the automobile was turned to the left, toward Mr. Powdermaker's home, at a regular crossing.

An adult son of Mr. Powdermaker thus described his

father's business habits as a salesman for Greenwald, Inc.:

"He left the house and went around to see his various accounts—his various customers and came home around 11.00 or 11.30 to telephone other customers that it was necessary to call on. Most of that business is done on the telephone. * * * It wasn't necessary to call on them every day. It was only necessary to call them up to get requirements. Some customers would require a telephone call in the middle of the day and some at 2.00 o'clock and some at 3.00 and some 4.00 and some at 6.00 and some at 8.00—all through the day, and while home he would eat lunch and he would leave there around 12.00 and go to the plant. Q. Did he ever call the plant when he was home at times? A. Yes. Q. Do you know why? A. The prices of commodities of a packing house fluctuate every day and it was necessary some days to call in to get prices of the various commodities. * * * Q. Now how long has this been going on—this custom? A. This has been going on for as long as I can remember."

The employer and insurer produced testimony from which it could be inferred that Mr. Powdermaker's last business transaction on the morning of the accident was the collection of rent from the tenants of two houses, which he owned, and that he was proceeding from one of those houses to his own home when he was fatally injured. But it is inferable from the other evidence in the case that he had been engaged during that morning in the performance of his salesmanship duties, including collections on account of sales, and was driving to his home with a view to serving further the objects of his employment by the use of his telephone at the period of the day when he customarily used that method of promoting his employer's business. The commission and the jury concluded from the evidence in the record that the claimant's husband, after deviating temporarily from the course of his employment in order to make his rent collections, had resumed his service to the employer when he was proceeding homeward for the purposes of the

communications which were habitually necessary in his sale operations. In our opinion the evidence was legally sufficient to permit the inference, actually drawn alike by the commission and the jury, that the claimant lost her husband in consequence of an accidental injury in the course of his employment. This view is consistent with the principle recognized by the decisions in *Southern Can Co. v. Sachs,* 149 Md. 562, 131 A. 760; *Boetler v. Gardiner-Buick Co.,* 164 Md., 478, 481, 165 A. 611, *Nicholson v. Walters,* 153 Md. 16, 18, 137 A. 357, and *Weston-Dodson Co. v. Carl,* 156 Md. 535, 144 A. 708, 710.

In the case last cited it was said by Chief Judge Bond to be "the conclusion of the court that by the passage of the statute extending the provisions of the Workmen's Compensation Act to salesmen the Legislature necessarily included, within the risks covered, dangers of traffic accidents which might equally be incurred by others on the roads," and that if claimant was "found by the jury to be acting in the course of his employment at the time of the accident, then, as it was an ordinary street accident, the injury from it would be compensable."

In view of the circumstances proved and of the inferences of which they admitted and of the presumptive correctness of the commission's determination (Code, art. 101, sec. 56, as amended by Laws 1933, ch. 508), we must hold that there was no error in the lower court's refusal to rule conclusively, against the theory on which the order of the commission was based, that the accident for which compensation is claimed in this case did not occur in the course of the service for which the injured man was employed. This conclusion sustains the rulings which denied the motion for a reversal, on that ground, of the commission's action, and refused to grant the instruction for a directed verdict in favor of the employer and insurer on the formal issue by which that question was presented. The objections to the testimony as to the customary routine of the claimant's husband in the performance of his employment duties were also properly overruled.

The court below refused to submit the following issue, being one of those proposed by the appellants: "Were the employer and insurer prejudiced by failure of claimant, Minnie Powdermaker, widow, to file her claim before May 28, 1934." As the date of the accident was May 29th, 1933, and as the claim was not filed until the day before the expiration of the year within which a reimbursement suit by the employer and insurer against the United Railways & Electric Company could be instituted under the provisions of section 58 of article 101, and section 1 of article 67, of the Code, as amended by Laws 1929, ch. 570, sec. 3, and section 2, and as there was not then sufficient opportunity to bring such a suit in time to maintain it as against a plea of limitations, it was a defensive theory of the employer and insurer that they were prejudiced by the delay of the deceased employee's widow in filing her claim for compensation. The testimony indicates that the widow's failure to file the claim earlier was because she had not become aware of her rights under the Workmen's Compensation Act. It is provided by that statute (Code, art. 101, sec. 39, as amended by Laws 1931, ch. 339): "When death results from injury the parties entitled to compensation under this Article, or some one in their behalf, shall make application for same to the Commission within one year from the date of death." The claim in this case having been filed within the period allowed by the Code there was no legal ground for a complaint by the employer and insurer that it was not filed more promptly.

Another issue proposed by the employer and insurer was in the following form: "Did the claimant, Minnie Powdermaker, notify the employer of the death of Lewis Powdermaker, and of her intention to make claim therefor, within thirty days after the death of the said Lewis Powdermaker." The lower court eliminated the words "and of her intention to make claim therefor," and granted the issue as thus modified. There is no requirement of the Workmen's Compensation Law that notice of the accident should express an intention to make a claim

under its terms, and the court's modification of the issue was proper.

No error was committed in the refusal to grant the following two issues submitted by the appellants: "Was the failure of the claimant to give notice to the employer within thirty days—because for some sufficient reason it could not be given"; and "Was there sufficient evidence from which the conclusion can be drawn that the employer and insurer were not prejudiced by the failure of the claimant to give notice to the employer within thirty days?" By agreement the case was being tried in the Court of Common Pleas upon the evidence produced before the State Industrial Accident Commission, from which it appeared that a "credit man" of Greenwald, Inc., called to inquire about Mr. Powdermaker at the hospital where he had just died, within several hours after he was injured, and that the president of the company was invited by the son of the deceased to act as a pall-bearer at his father's funeral. Prior to an amendment by chapter 475 of the Acts of 1935, section 38 of the Workmen's Compensation Act provided: "Notice of an injury for which compensation is payable under this article shall be given to the employer within ten days after the accident, and also in case of the death of the employee resulting from such injury, within thirty days after such death. Such notice may be in writing, and contain the name and address of the employee, and state in ordinary language the time, place, nature and cause of the injury, and be signed by him or by a person on his behalf, or in case of death, by any one or more of his dependents, or by a person on their behalf. The failure to give such notice, unless excused by the Commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the State Accident Fund, insurance company, or employer, as the case may be, has not been prejudiced thereby, shall be a bar to any claim under this article." As amended by the Acts of 1935, that section now provides that notice of the injury shall be given to the employer "in writing or other-

wise," and, "if in writing, shall contain the name and address of the employee, and state in ordinary language the time, place, nature and cause of the injury." But prior to the amendment of section 38, the death of Mr. Powdermaker in May, 1933, and the filing of his widow's claim, the provision of the section, as then in force, that the notice to the employer "may be in writing," was not regarded by this court as mandatory. In *Vang Construction Co. v. Marcoccia,* 154 Md. 401, 403, 140 A. 712, 713, Judge Parke, speaking for the court, in reference to the notice specified in section 38, said: "The employer had notice of the time, place, manner, and cause of the injury and death, and, under the circumstances, no further notice was required of the dependent." As the employer in the present case received, in the manner described, the information as to employee's fatal accident which a notice in writing would have contained, as provided by the act, there was no occasion to submit issues assuming failure to give a sufficient notice.

It is provided by section 39 of the act, as amended by Laws 1931, ch. 339, that a claim for compensation on account of the death of an employee shall "be accompanied with proof of death and proof of relationship under this Article, certificates of attending physician, if attended by a physician, and such other proof as may be required by the rules of the Commission." One of the granted issues involved the inquiry, "Did the claimant, within one year from the date of the death of Lewis Powdermaker, accompany her application to the State Industrial Accident Commission with (a) Proof of death; (b) Proof of relationship; (c) Certificate of attending physician, if attended by a physician." It was undisputed that the claim was not accompanied by a certificate of an attending physician. At the claimant's request the jury were instructed that, if the omission to accompany her claim with such a certificate was because no physician was in attendance, the answer of the jury to subdivision (c) of the issue referred to should be, "no—and no attending physician."

On the other hand, the employer and insurer offered prayers upon the theory that the failure to accompany the claim with an attending physician's certificate was a conclusive ground of defense.

The claimant's husband was taken to the hospital from the place of the accident and died within a few hours. There is no proof that the care he received at the hospital was administered by any one who could properly be characterized as an attending physician, and the jury found to the contrary. That the death resulted from the accident is not questioned. The refusal of the court to grant the last noted prayers was correct.

The burden of proof prayer offered by the employer and the insurer was properly refused because it disregarded section 56 of the Workmen's Compensation Act (Code, art. 101, sec. 56, as amended by Laws 1933, ch. 508), providing: "In all court proceedings under or pursuant to this Article, the decision of the Commission shall be prima facie correct and the burden of proof shall be upon the party attacking the same."

In the rulings on the other prayers we have also found no error.

*Judgment affirmed, with costs.*

BOND, C. J., and PARKE and SLOAN, JJ., dissent.