## PEARL HEAPS, ET AL. *v.* CAROLINE C. COBB

[No. 18, October Term, 1945.]

*Decided December 17, 1945.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*Helen Elizabeth Brown* and *Hamilton O'Dunne, Assistant City Solocitors,* with whom was *Simon E. Sobeloff, City Solicitor,* on the brief, for the appellants.

*Philip B. Perlman* and *Charles C. G. Evans* for the appellee.

*R. E. Lee Marshall, F. Murray Benson, Charles C. Wallace, Eben J. D. Cross, Paul F. Due, Wilson K. Barnes,* and *Wirt A. Duvall, Jr., amici curiae.*

The following opinion, prepared by Judge MELVIN, was adopted by the Court, after his death, and ordered filed as the opinion of the Court.

The appellee is the widow of the late George Cobb who, at the time of his death on June 17, 1943, was the Chief Engineer of Baltimore City and a member in good standing of its "Employees' Retirement System." The appellants are the members of the Board of Trustees of said System, which was established by municipal ordinance No. 553, approved February 1, 1926, and now codified as Article 30 of the City Code. The appellants refused to grant the appellee's petition for pension benefits under the ordinance and when, subsequently, the Baltimore City Court issued the writ of mandamus directing them to do so, this appeal was taken.

The particular portion of the ordinance which applies to the case at bar is Sub-section 9 of Section 6. It reads as follows:

"Accidental Death Benefit

"(9) Upon the receipt of proper proofs of the death of a member by the Board of Trustees there shall be paid to the member's designated beneficiary or to his estate the amount of his accumulated contributions, and if, upon the receipt of evidence or proofs that such death was the natural and proximate result of an accident occurring at some definite time and place while the member was in the actual performance of duty, the Board of Trustees shall decide that the death was the result of an accident in the performance of duty and not caused by wilful negligence on the part of the member, there shall be paid in lieu of the ordinary death benefit provided by the contributions of the City, a pension of one-half of the average final compensation of such employee,

"(a) To his widow, to continue during her widowhood; * * *."

In pursuance of the aforegoing provisions, and in due course after the death of her husband, Mrs. Cobb filed with the appellant Board her application for the "accidental death benefit" prescribed by this sub-section. The claim was made out on the usual detailed form, signed and sworn to by the claimant. Attached to it were the proofs of death, including the attending physician's certificate, the autopsy record and the Certificate of Death issued by the Baltimore City Health Department. These proofs of death concur in the finding that Mr. Cobb's death resulted from injuries received in an automobile accident. It is relevant to state here that the record shows no evidence to the contrary on this point.

The appellee's claim was filed on July 7, 1943, and the appellant Board set August 2nd as the date for a hearing on it. In doing so, it instructed its secretary to notify the claimant's counsel that she "would be permitted to file an affidavit with the understanding that if the Board desires to call on her later it would do so." On the appointed date the appellant Board held the hearing as scheduled, and had before it Mrs. Cobb's statement, under oath, setting forth the facts relating to the accident, together with the proofs of death and also the oral testimony of the City's Assistant Chief Engineer and its Highway Engineer. Their testimony was to the effect that Mr. Cobb's duties as Chief Engineer were manifold and extensive, requiring him to be on duty, or subject to call, at all hours of day and night; that on the morning of the fatal accident, June 14, 1943, Mr. Cobb had an official appointment for ten o'clock at his office to join a committee of other city officials on an inspection trip, in which they were to use the City Comptroller's car. It was also developed before the appellant Board, and conceded to be a fact in the case, that it had been the custom for many years for the City to provide transportation for the Chief Engineer to and from his office and his home, and when otherwise engaged on the City's busi-

ness. Further facts developed before the Board, and appearing in the record without contradiction, are that sometimes Mr. Cobb used his own automobile on City business, and that, by way of recognition of that practice and for the protection of the City, the Mayor and City Council of Baltimore was named as one of the insured in the insurance policy covering Mr. Cobb's private car.

On the morning of the fatal accident, June 14, 1943, the City's car assigned to the Chief Engineer called for Mr. Cobb as usual to take him to his office, where he had the ten o'clock appointment above referred to. However, he decided to use his own car, in substitution for the one provided by the City, inasmuch as his wife and his aunt were going along with him for part of the way, the reason given for this substitution of cars being that Mr. Cobb thought that the presence of two members of his family in a City car might be misconstrued.

While on his way to the City Hall on Thirty-third Street near Ednor Road, being on the direct route customarily taken by him in going to and from his office, Mr. Cobb "slumped forward in his seat and lost control of the car which veered to the right, striking first a lamppost and then a tree." The accident happened about ten minutes before ten o'clock that morning. Mr. Cobb remained at the hospital until June 17, 1943, when he died as the result of internal injuries sustained in the accident.

With all this testimony, documentary and oral, before it, the appellant Board decided at the hearing on August 2, 1943, to call for an opinion from the City Solicitor, who is the Board's legal adviser under the terms of the ordinance in question. Another hearing before the Board was held on October 4, 1943, at which time it had before it a written opinion from the City Solicitor, dated September 10, 1943. Additional testimony was submitted at this hearing and argument of counsel heard. Then, on October 18, 1943, the Board held a meeting at which a

motion to grant Mrs. Cobb's application was lost by a vote of two to three.

According to the record, no facts were stated showing the basis of this action and no reason given, except the following entry in the minutes of that meeting: "The motion was lost by a majority vote, therefore, accidental death benefits were denied in the case of George Cobb, 19540, because he was not in the actual performance of duty at the time of the accident. Ordinance No. 553-6 (9)."

Thereafter, the Board granted the request of appellee's counsel for a reconsideration of the claim. February 21, 1944, was set as the date for a special meeting at which re-argument would be heard. The minutes of that meeting show that "after hearing testimony, the Board referred the case with all the records to the present City Solicitor for his opinion." In response to that request the Board received, under date of April 24, 1944, another written opinion from its legal adviser, the successor to the City Solicitor who wrote the one of September 10, 1943. Finally, on June 5, 1944, after further consideration, the Board went on record as re-affirming its original action, refusing to grant the appellee's claim.

The decision of this appeal depends on whether or not (1) on the undisputed facts the appellee was entitled under the ordinance to the pension claimed, and (2) the appellant's refusal of the pension amounted to "arbitrary" action,—that is to say, was without any supporting evidence. As stated by the Supreme Court in the *Chicago Junction Case,* 264 U. S. 258, 44 S. Ct. 317, 320, 68 L. Ed. 667, "To refuse to consider evidence introduced or to make an essential finding without supporting evidence is arbitrary action."

Administrative boards in general may be said to act in a quasi judicial capacity insofar as they have the duty to hear and determine facts and, *based on them,* to make decisions. Moreover, such decisions carry with them the presumption of validity and, where the statute or ordinance provides for an appeal to the courts, will not be

disturbed on review if the record shows substantial evidence to sustain the findings. The boards, however, are not clothed with judicial authority, which the legislature has no power to confer upon them, Article 4, Md. Constitution; *Dal Maso v. Board, etc.,* 182 Md. 200, 34 A 2d 464, and their decisions, when they impair personal or property rights, are not irreviewable. The legislature is without authority to divest the judicial branch of the government of its inherent power to review actions of administrative boards shown to be arbitrary, illegal or capricious, and to impair personal or property rights; but the courts are likewise without authority to interfere with any exercise of the legislative prerogative within constitutional limits, or with the lawful exercise of administrative authority or discretion. As stated by this Court in the recent case of *Hecht v. Crook,* 184 Md. 271, 40 A. 2d 673, 677, regarding the construction of the ordinance: "In the last analysis, the question as to what decisions of an administrative agency are reviewable must turn upon the statute creating it, and upon the type and degree of discretion conferred upon the particular agency. Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative or with the exercise of sound administrative discretion, where discretion is clearly conferred."

The appellant Board is one of those tribunals created by an ordinance which does not expressly provide for an appeal from its decisions, and, largely because of that omission, the appellant is claiming for its decision in the instant case a finality which would place it beyond the reach of the Court in a mandamus suit.

Such a claim is based on an obvious misconception of the ordinance and the Charter provisions under which the ordinance was passed. This very Board of Pension Trustees only recently, in the case just cited (decided January 10, 1945) involving another section of this same

ordinance, questioned the reviewability of its action; but this Court overruled the contention and held that its decision as to the legal interpretation of the language of the ordinance was open to review in that mandamus proceeding.

In the instant case, this Board again comes before the Court seeking to avoid a review of its action by contending that it was simply exercising the discretion and judgment which the ordinance conferred upon it, and that its decision was, therefore, final and incontestable. However, if the appellant can show no facts at all to support this decision there would be no basis for the exercise of discretion or judgment, and it would be just as clearly open to review by mandamus as was its action in the Hecht case, *supra*.

Where the statute or ordinance makes no provision for judicial review, an implied limitation upon an administrative board's authority is that its decisions be supported by facts and that they be not arbitrary, capricious or unreasonable.

The doctrine is well illustrated in the review of this subject by Professor McGovney, of the University of California, in these words: "The general rule with respect to nearly all Federal administrative agencies and those of other states is that their findings of fact are final if there is substantial evidence to support them. With respect to the issues of fact, the reviewing court examines the evidence taken by the administrative agency, not to re-weigh it, not to substitute the Court's judgment for that of the agency, but to determine whether the agency acted rationally, that is to say, that it did not arrive at its conclusion arbitrarily." *Cal. L. R.* (1942) Vol. 30, 509. See, also, *Cons. Edison Co. v. NLRB,* 305 U. S. 197, 59 S. Ct. 206, 83 L. Ed. 126; *Minn. L. R.,* Vol. 25, 593, 34 Am. Jur. 862; *Schwab v. McElligott,* 282 N. Y. 182, 186, 26 N. E. 2d 10; *Dierssen v. Civil Service Commission,* 43 Cal. App. 2d 53, 110 P. 513; *Naughton v. Retirement Board, etc.* 43 Cal. App. 2d 254, 110 P. 2d 714; *Walker v. San Gabriel,* 20 Cal. 2d 879, 129 P. 2d 349, 142

A. L. R. 1386; *Vom Baur Federal Administrative Law,*
Vol. 2, 505 (1942); *"Administrative Law and the
Courts,"* Roscoe Pound, Boston University Law Review,
Vol. XXIV, 201, 1944.

An examination of the record before us, including the
appellant's answer to the petition for mandamus filed
after its demurrer had been overruled, shows two grounds
for its denial of the appellee's claim: (a) "The Board of
Trustees were justified in reaching the reasonable con-
clusion that George Cobb received a heart attack which
was the proximate cause of his death, and that the in-
juries incident to the accident were not the direct and
proximate cause of his death"; and (b) That the deceased
(George Cobb) was not engaged in the actual perform-
ance of duty at the time of the fatal accident.

What supporting evidence, if any, did the appellant
have for the stand thus taken by it? As to the first of
these grounds, there was no evidence whatever that Mr.
Cobb's death was due to a "heart attack." On the con-
trary, all of the testimony, including official reports and
medical certificates, shows that his death was the natural
and proximate result of an accident occurring at the
definite time and place mentioned in the official reports.

Notwithstanding this fact, the appellant persisted in
adhering to this defense by embodying it in its answer
filed November 24, 1944, and sworn to by a member of
the Board.

As to the other of the grounds stated by the appellant
for the denial of appellee's claim, namely, that the
deceased was not engaged in the actual performance
of duty at the time of the fatal accident, the appellant
had before it the following uncontradicted evidence:
That Mr. Cobb's death resulted from an accident which
occurred while he was on his way from his home to his
office to keep an official appointment; that it was the
custom and had been for many years, for the City to
furnish the Chief Engineer with an automobile which
he customarily used when going from his home to his

office and return, and that he sometimes used his own car for these trips or otherwise on City business; that on the morning in question the deceased decided to make the trip to the City Hall in his own car because his wife and his aunt were going part of the way with him.

This testimony was uncontradicted, undisputed and unimpeached, and yet the appellant board decided, by a majority vote, to act contrary to it, instead of recognizing the established facts and adopting them as the basis of its action. The plain language of the ordinance states the duty of the Board to be to pay the widow of a deceased member of the Employees' Retirement System the prescribed pension "if, upon the receipt of evidence or proofs that such death was the natural and proximate result of an accident occurring at some definite time and place, while the member was in the actual performance of duty, the Board of Trustees shall decide that the death was the result of an accident in the performance of duty, and not caused by wilful negligence on the part of the member."

In the face of the indisputable and uncontradicted facts above stated, where was there any latitude for the exercise of judgment and discretion? What the Board had to decide were the three points prerequisite to the granting of the pension, which had already been established by the record before the Board, namely, (1) that the death was the result of an accident; (2) that the accident occurred while the member was in the actual performance of duty; and (3) that it was not caused by wilful negligence on his part.

It was contended during the course of these proceedings that the deceased was not engaged "in the actual performance of duty" at the time of the fatal accident because he was then only on his way to work, and because his wife and his aunt were passengers in his private car on his journey to the City Hall that morning. However, this contention is unsound, for the principle of law applicable to the facts of this case is that

where an employee is furnished transportation by his employer in connection with the latter's business, under an agreement express or implied, the employee is to be considered on duty while using this transportation. This holds true whether the injury occurred while the employee was using a vehicle furnished by the employer, or was using one of his own as a substitute, provided the substitution was for some reason connected with his employment. In the case at bar, a conceded fact is that Mr. Cobb was using his own car on the morning of the accident for the identical purpose for which he would have used the City's car, namely, to go to his office to keep an appointment on City business. The presence of his wife and his aunt in the car was purely incidental and has no bearing on the legal principle involved here.

While the adjudicated cases in which this principle has been applied are mostly those under workmen's compensation statutes, dealing with accidental injuries "arising out of, and in the course of, employment," the analogy between them and the pension cases like the one at bar is so close on the point at issue that we find no legal distinction in applying the principle. The test in both classes of cases is whether the transportation was furnished by the employer as an incident of the employment, and the nature of the mission on which the employee was engaged. *Harrison v. Central Construction Co.*, 135 Md. 170, 108 A. 874; *Reisinger-Siehler Co. v. Perry*, 165 Md. 191, 167 A. 51; *Greenwald, Inc. v. Powdermaker*, 170 Md. 173, 183 A. 601; *Beasman v. Butler*, 133 Md. 382, 105 A. 409. See, also, *Annotation to Nesbitt v. Twin City Forge & Foundry Co.*, 145 Minn. 286, 177 N. W. 131, 10 *A. L. R.* 169; *Konopka, et al. v. Jackson County Road Commission*, 270 Mich. 174, 258 N. W. 429, 97 *A. L. R.* 552; *Phifer's Dependents v. Foremost Dairy*, 200 N. C. 65, 156 S. E. 147, 148, quoting with approval *Harrison v. Central Construction Co., supra.*

As indicated in the Harrison case, *supra,* as a general rule, an employee on the way to work is not in the course of employment and is not in the actual performance of

duty. However, where the employer furnishes transportation the rule is different, and the employee is actually on duty when he begins to use this transportation, whether it be in a vehicle supplied by the employer or one of his own substituted for the same mission. *Konopka v. Jackson County Road Commission, supra; Phifer's Dependents v. Foremost Dairy, supra; Pepoon v. Rachels,* 4 N. J. Misc. 40; *Rachels v. Pepoon,* 5 N. J. Misc. 122, 135 A. 684; *Donovan's Case,* 217 Mass. 76, 104 N. E. 431, Ann. Cas. 1915C, 778; *Littler v. Fuller Co.,* 223 N. Y. 369, 119 N. E. 554; *Scalia v. American Sumatra Tobacco Co.,* 93 Conn. 82, 105 A. 346.

The closest approach to precedent for deciding a pension claim under this particular ordinance is found in *Duncan v. Graham,* 155 Md. 507, 142 A. 593, which is the only case on the subject to reach this Court. There the City Register received fatal injuries while walking to an undisclosed destination from a bank where he had gone from his private office to make a deposit of personal funds and to discuss the subject of city deposits with the president of the bank (his cousin) who was not in. From the testimony it could have been inferred that he was on his way back to his private office or was going to the city hall or to the court house, but there was no question at all in that case as to the transportation feature, which is basic in the case at bar. The Board of Pension Trustees passed a resolution in the former case reciting the facts and holding that the City Register was "in the actual performance of duty" at the time he was struck by an automobile a few minutes after leaving the bank. The Board concluded that he had begun his official day when he went to the bank to discuss the matter of city deposits. On appeal to this Court it was held that the statute, as then worded, did not authorize the payment of a pension for accidental death, and, as a result, the legislature enacted Chapter 113 of the Acts of 1929, conferring that authority and making it retroactive. In the instant case no such liberal construction was given this section of the ordinance and no resolution

passed or statement made giving the facts upon which its disapproval of the claim was based.

There being no dispute at all as to the relevant facts before us in the instant case, the issue finally resolves itself into one of interpreting the language of the ordinance in the light of these facts, the particular words being "in the actual performance of duty." That is an unmixed question of law, for, as stated by this Court in *Moore v. Clark,* 171 Md. 39, 46, 187 A. 887, 890, "Where the facts are undisputed, and permit no inferences consistent with the existence of a supposed or asserted right, the existence of such right, wherever it arises, whether before the Commission, the trial court or this Court, is an unmixed question of law. If it were otherwise, the rights of parties to proceedings under the statute would depend not upon the law but upon the unguided and unrestrained discretion of men." This brings the case at bar directly within the doctrine of the Hecht case, *supra,* wherein we held that the appellant Board's action construing the language of this same ordinance was reviewable in a mandamus suit.

Having placed our construction upon the phrase in question, as above set forth, the only conclusion to be reached is that the appellee has fully made out a case in compliance with every prerequisite of the ordinance, thus leaving no foundation of fact for the denial of her claim, and placing upon the appellant the mandatory duty of approving it.

At the hearing before the trial court the appellant took exception to the receiving in evidence of the two written legal opinions sent to the Board by the two City Solicitors, and to the exclusion of the transcript of the hearing held by the Board on February 21, 1944. The appellant also took exception to the action of the trial court in not allowing the three majority members of the appellant Board to testify as to why they voted the way they did. The proffer of proof was in no material respect different from the defenses set up in their answer to the petition for mandamus, and could have had no

substantial probative value of any kind.

For the same reason there was no prejudicial error in excluding the transcript of the hearing held by the Board on February 21, 1944, and in receiving in evidence the two written opinions sent to the Board by the City Solicitors. The whole case was closed, so far as the appellant Board was concerned, when it rendered its final decision on June 5, 1944. If the action it then took had been supported by the evidence, or if there had been any disputed facts before it, its decision would not be open to judicial review. On the other hand, if at that time none of the essential facts was in dispute, but all of them combined to support the claim for pension as prescribed by the ordinance, then there was no basis for the exercise of judgment or discretion, and any action by the Board contrary to those established facts would have to be classified as "arbitrary," and subject to correction through the writ of mandamus. The trial court so ruled, and in this ruling we concur.

*Judgment affirmed, with costs.*