CARL SNOWDEN *v.* HANDGUN PERMIT REVIEW
BOARD OF THE MARYLAND DEPARTMENT
OF PUBLIC SAFETY AND CORREC-
·TIONAL SERVICES

[No. 978, September Term, 1979.]

*Decided April 17, 1980.*

The cause was argued before GILBERT, C. J., and MOYLAN
and MASON, JJ.

*Keith Krissoff,* with whom were *Alan Hilliard Legum* and
*Legum, Cochran, Chartrand & Wyatt, P.A.* on the brief, for
appellant.

*James J. Doyle, III, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *H. Edgar Lentz, Assistant Attorney General,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

Carl Snowden seeks to obtain a permit to carry a gun. The Superintendent of State Police, the Hand Gun Permit Review Board and the Circuit Court for Anne Arundel County (Thieme, J.), all agree that there is "no substantial reason" for him to do so.

The record discloses that on October 10, 1978, Mr. Snowden, who is employed as a social worker by Anne Arundel County, submitted an application for a handgun permit to the Superintendent of the Maryland State Police (State Police.)[1] His stated reason for needing a permit was self-protection.

Pursuant to the Code provisions, the State Police conducted an investigation into Mr. Snowden's request. An investigator contacted Snowden's place of employment and learned from his supervisor that there was no reason for Snowden to be armed in his job, and further that the supervisor knew of no threats or assaults committed against Mr. Snowden. When Snowden himself was contacted by a State Police investigator, he told the investigator that he was a community activist, working in anti-drug and anti-crime programs. He reported that he had heard from various people of threats to do him bodily harm. He was not, however, able to provide the names of any persons who had threatened him, nor did he report any assaults. Apparently, the information Snowden possessed as to the threats was passed to him by others who said they had heard the threats or heard of them.

---

1. Md. Ann. Code art. 27, § 36 (E) (a) provides for the issuance of a handgun permit by the State Police to any person who is found to meet the six criteria of the section. Appellant was denied a permit on the sixth item of the criteria, namely: "(6) Has, based on the results of investigation, good and substantial reason to wear, carry, or transport a handgun, provided however, that the phrase 'good and substantial reason' as used herein shall be deemed to include a finding that such permit is necessary as a reasonable precaution against apprehended danger."

Snowden's application was rejected by the Superintendent of the State Police on November 8, 1978, because Mr. Snowden did not have "a good and substantial reason to wear, carry or transport a handgun." Snowden, as he is permitted to do by Md. Ann. Code art. 27, § 36E (g) (ii) (1979 Cum. Supp.), appealed to the Handgun Permit Review Board (Board), a separate agency of the Department of Public Safety & Correctional Services. Md. Ann. Code art. 27, § 36E (g) (1979 Cum. Supp.).

The Board reviewed the findings of the Superintendent and considered the additional evidence presented to the Board by Snowden. That evidence included two newspaper articles from the *Evening Capital* which referred to his drug combating activities in Anne Arundel County. He also offered a memorandum prepared by him for his attorney which included statements that:

1. He received threats after newspaper articles indicated that he was calling on public officials to crack down on drug pushers in Meade Village (an Odenton public housing project).

2. A named resident, Ms. Jeannie Herold, overheard a group of men (otherwise unidentified) threatening harm to Mr. Snowden if he went to Meade Village.

3. "That the potential for violence exist [*sic*] in the Meade Village community, as demonstrated by the reported attacks on residents in Meade Village as reported to the police."

4. Mr. Snowden reported the threats to Lt. Lee Apperson of the narcotics division of the Anne Arundel County Police Department and to State's Attorney, Warren B. Duckett.

5. Mr. Snowden planned to continue his community work which would involve him in anti-drug and anti-crime activities.

The Board issued its Decision and Order on January 10, 1979. The Board found, *inter alia,* that Mr. Snowden had been involved in community work dealing with drug control and prevention, had received threats, but had never been assaulted in connection with these activities. The Board

further found that the degree of apprehended danger to which appellant felt he was subjected was not sufficient to warrant the issuance of a permit, and Mr. Snowden had not demonstrated a "good and substantial reason" to carry a handgun.

In its conclusions of law, the Board found that the applicant had not met the statutory requirements for issuance of a handgun permit.

Snowden appealed the Board's decision to the Circuit Court for Anne Arundel County. Following a hearing, Judge Thieme issued a "Memorandum and Order" in which he dismissed the appeal and affirmed the Board.

Snowden appealed to this Court where he raised two issues:

> "I. The Decision of the Handgun Permit Review Board that Appellant lacks 'Good and Substantial Reason' to wear, carry, or transport a handgun is unsupported by competent, material and substantial evidence in view of the entire record as submitted.
>
> II. The Decision of the Handgun Permit Review Board that Appellant lacks 'Good and Substantial Reason' to wear, carry, or transport a handgun is arbitrary and capricious." [2]

The only issue actually before this Court is whether the circuit court erred in upholding the Board's decision. The applicant for a handgun permit has the burden of establishing a "good and substantial reason" to wear, carry, or transport a handgun. Md. Ann. Code art. 27, § 36E (a) (6). If the evidence presented is not sufficient to meet this

---

**2.** Md. Ann. Code art. 27, § 36E (1979 Cum. Supp.) provides that judicial review of Board decisions is governed by the Administrative Procedure Act. That Act, codified in Md. Ann. Code art. 41, § 255(F) (1979 Cum. Supp.), provides for reversal of an agency decision if "the administrative findings, inferences, conclusions or decisions are:

. . . .
(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or
(6) Arbitrary and capricious."

burden, the Board must sustain the decision of the State Police. Md. Ann. Code art. 27, § 36E (g) (1979 Cum. Supp.).

By Laws 1972, ch. 13, § 3, the Maryland General Assembly enacted comprehensive handgun legislation. The Act is now codified as Md. Ann. Code art. 27, § 36B *et seq.* As part of its Declaration of Policy, Md. Ann. Code art. 27, § 36B (a), the Legislature said, "Further regulations on the wearing, carrying, and transporting of handguns are necessary to preserve the peace and tranquility of the State and to protect the rights and liberties of its citizens." Md. Ann. Code art. 27, § 36B (a) (iv). The Handgun Permit Review Board is empowered to sustain, reverse, or modify any rejection or revocation of a handgun permit by the State Police. Md. Ann. Code art. 27, § 36E (g) (ii) (1979 Cum. Supp.).

"The primary function of administrative agencies is to advance the will and weal of the people as ordained by their representatives — the Legislature. These agencies are created in order to perform activities which the Legislature deems desirable and necessary to forward the health, safety, welfare and morals of the citizens of this State." *Department of Natural Resources v. Linchester,* 274 Md. 211, 222 (1975).

The role of the judiciary in reviewing the decisions of an administrative agency is extremely narrow because of the recognized expertise of the agency in a particular field. *Secretary v. Crowder,* 43 Md. App. 276, 280 (1979). We noted in *Crowder* the court's 1) deference to agency expertise; 2) the presumption of validity of agency actions; 3) the inappropriateness of a court's substituting its fact finding for that of the agency; and 4) the correction of agency decisions only when they are illegal, arbitrary, and unreasonable acts. *Secretary v. Crowder, supra* at 280-81.

Viewing Mr. Snowden's contentions in light of the guidelines set out in *Crowder* and its ancestors, we look at the entire record to determine whether the circuit court correctly decided that the Board could have reasonably drawn inferences from the facts before it to support its decision that the appellant lacked "good and substantial

reason" to carry a handgun. "[N]ot only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences," *Bulluck v. Pelham Wood Apartments,* 283 Md. 505, 513 (1978), not the court. In the instant case there was no conflicting evidence. The Board merely had to decide whether the appellant's evidence was sufficient for it to reverse or modify the Superintendent's refusal to issue a handgun permit to Mr. Snowden.

The appellant suggests that the phrase "reasonable precaution against apprehended danger" is the sole criterion for defining "good and substantial reason." He urges that "apprehended danger" is to be viewed from the subjective standpoint of the applicant. Relying on that premise as true, he then states that since a reasonable mind "could not reasonably conclude that Mr. Snowden is not apprehensive of danger," the Board lacked substantial evidence to deny a permit. If we accept Snowden's reasoning there would never be a time when a lawful person, fearful of his safety, would be denied a permit to carry a gun. Any vague threat would be sufficient to cause apprehension and, thus, the right to have a permit to carry a handgun. We think the phrase "good and substantial reason," as used in Md. Ann. Code art. 27, § 36E (a) (6), means something more than personal anxiety over having one's name connected publicly with anti-drug and anti-crime activities. It means, we believe, something more than the concern the individual may have because he has been told by another, that she heard some unidentified men threatening to harm the applicant if he journeys to Meade Village. The statute makes clear that it is the Board not the applicant, that decides whether there is "apprehended danger" to the applicant. If the Act were read as Mr. Snowden would have the court read it, there would be no necessity for a review by the Board. Each person could decide for himself or herself that he or she was in danger. The State Police would become a "rubber stamp" agency for the purpose of handing out handgun permits. The carefully considered legislation would be rendered absolutely meaningless insofar as the control of handguns is concerned.

It was reasonable for the Board to consider and give weight to the fact that Snowden did not need a handgun for employment purposes, that he did not know the names of any persons threatening him, that at least one of the threats was relayed to him by a third party, and that the inferences drawn from the facts did not substantiate a valid reason for a permit to be granted.[3]

Snowden argues that since his evidence was "uncontradicted, undisputed, and unimpeached" he has made out "a case in compliance with every prerequisite of the ... [statute], thus leaving no foundation of fact for the denial of ... [his application] and placing upon ... [the Board] the mandatory duty of approving it." *Heaps v. Cobb,* 185 Md. 372, 385 (1945).

Appellant misreads the *Heaps* opinion as precedent for the instant case. In *Heaps* the widow of a deceased Baltimore City employee sought death benefits from the Employees' Retirement System. The Board of Trustees of the system, under the ordinance in question, had a "duty" to pay the widow of a deceased member the prescribed pension if it received evidence or proof that the death "was the natural and proximate result of an accident ... in the actual performance of duty, ... and not caused by wilful negligence on the part of the member." *Heaps v. Cobb, supra* at 382.

The Court of Appeals in that case held that under the plain words of the ordinance there was no latitude for the exercise of judgment and discretion when there were indisputable and uncontradicted facts supporting the claim for pension.

The statute, in the case now before us, leaves to the Board the question of what is "good and substantial reason."

The circuit court's scope of review "is limited 'to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.' " *Bulluck v. Pelham Wood*

---

3. Although the Board stated in answers to Appellant's interrogatories that proof of an assault, names of individuals who have made threats, or the need for a handgun in employment are not necessary prerequisites to the granting of a permit, these factors or the lack thereof can be considered by the Board.

*Apartments, supra* at 512, citing *Dickinson-Tidewater v. Supervisor,* 273 Md. 245 (1974). A court cannot substitute its fact finding process for that of an agency. Judge Thieme, based on the record before him, could not say that the Board's decision was "unsupported by competent, material, and substantial evidence in view of the entire record as submitted."

There is nothing in the record to indicate that the Board's decision was either arbitrary or capricious, and Judge Thieme correctly affirmed the Board. We perceive no error.

*Judgment affirmed.*
*Costs to be paid by appellant.*