468 A.2d 141

Leo W. BURROUGHS, Jr. et al.

v.

Gene M. RAYNOR.

No. 1247, Sept. Term, 1983.

Court of Special Appeals of Maryland.

Dec. 7, 1983.

Rommani M. Amenu-El and Leo W. Burroughs, Jr., pro se.

David E. Zerhusen, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen. of Maryland and Jack Schwartz, Asst. Atty. Gen., on the brief, for appellee.

Submitted before GILBERT, C.J., and GARRITY and ADKINS, JJ.

ADKINS, Judge.

The sole issue presented by this appeal is whether the Board of Supervisors of Elections of Baltimore City has authority to determine whether persons who sign nominating petitions are registered voters eligible to vote for the candidates who present the petition, or whether the board's authority is limited to counting the number of names on the petitions presented, and to certifying any petition that contains at least the minimum number of names, without any determination as to the registered voter status of the signatories. The issue has two facets, the first involving statutory construction and the second concerning separation of powers.

### Facts

On November 8, 1983, the voters of Baltimore elected a mayor and other city officials, including members of the City Council. Appellants Leo W. Burroughs, Jr., and Rommani M. Amenu-El aspired to council membership. They sought election as independent candidates from the Fifth Councilmanic District. To obtain a place on the November ballot, each was required to file with appellee, Gene M. Raynor, Administrator of the Board of Supervisors of Elec-

tions of Baltimore City, a nominating petition "signed by not less than three percent of the voters who are eligible to vote for the office for which nomination by petition [was] sought." Art. 33, Annot.Code of Md. (1983 Repl.Vol.) § 7–1(b)(2). The parties have agreed that the number of signatures required by each appellant for this purpose was 1,997.

Burroughs filed petitions with over 3,500 signatures; those submitted by Amenu-El contained over 2,500. The board undertook to verify the submitted signatures in order to assure that they were those of registered voters. The verification process consisted of a comparison of each name on the petitions with the names of voters registered in the Fifth District. The names of petitioners who were not listed as registered voters on the board's records were deducted from the petitions. At the conclusion of this process, appellee determined that Burroughs's petitions fell short of the required 1,997 names by 75 and that Amenu-El's petitions were short by 595.

When so informed, appellants filed a petition for mandamus in the Circuit Court for Baltimore City. They asked the court to direct the board to place their names on the November 8 ballot. On October 11, 1983, the court sustained appellee's demurrer and denied the petition.[1] Burroughs and Amenu-El promptly appealed. On November 7, 1983, we passed an order affirming the judgment of the circuit court. We now explain our reasons for doing so.

### The Statutory Authority of the Board of Supervisors of Elections

It is conceded that each appellant possesses the general qualifications required for candidacy for the Baltimore City Council. It is conceded that appellants' nominating petitions were timely filed and verified regular as to form. The only issue, as we have noted, is whether the board had the power

---

1. Implicit in this order was a denial of leave to amend the petition. See Md.Rule 345 e.

to remove from those petitions the names of signers who were not registered voters according to the board's records. Appellants claim that the board lacked this power. They argue, in effect, that the only authority possessed by the board was to count the total number of names on the petition and to certify appellants as candidates if the gross number of names of each petition exceeded 1,997.

The foundation for this argument is *Tawney v. Board of Supervisors of Elections,* 198 Md. 120, 81 A.2d 209 (1951). But the foundation provided appellants by *Tawney* is one of sand. In that case, as in this, an independent candidate filed nominating petitions containing more names than the minimum required by statute. In that case, as in this, the election authorities eliminated the names of those signers who were not registered voters, thereby reducing the total number of names to less than the statutory minimum. In that case, as in this, the lower court rejected an attempt to secure placement on the ballot via mandamus.

When *Tawney* reached the Court of Appeals, it reversed, saying that when nominating petitions are filed with the Board of Election Supervisors

> [t]hey must examine them to see if they are regular on their face and contain the requisite number of names. Beyond that they have no authority to go. Their duties are entirely ministerial, and when they find the requisite number of names on a petition which is in all respects regular, their duty is to place the name of the candidate so nominated on the ballot.

198 Md. at 128, 81 A.2d 209.

The problem with applying the *Tawney* holding to the case now before us is that the statutes before the court in that case were substantially different from the present provisions of the Election Code (Art. 33, Annot.Code of Md. (1983 Repl.Vol.)). *Tawney* dealt with former Art. 33, §§ 39 and 62 (1939 Code, 1947 Supp.). Section 39 provided for nomination by petition. It required that nominating petitions or certificates of nomination be signed by specified

number of "voters ... residing in the political division in and for which the officer is to be elected...." It required each signer to "append to his signature his residence, occupation, the precinct or district where he is registered as a voter" and to print or type his name "immediately below" his signature. And it listed other formal prerequisites of a petition. Section 62 provided, in pertinent part: "It shall be the duty of the Board of Supervisors of Elections of each county and the City of Baltimore to provide ballots ... and cause to be printed on the ballots the name of every candidate whose name has been certified to or filed with the proper officers in the manner herein provided...."

Faced with § 62's narrow delineation of the authority of election boards, it is easy to understand why the *Tawney* court concluded that "the duty of the receiving election board ... is only to see that the formal requirements of the statute are complied with, and that the number of names upon the certificate is sufficient." 198 Md. at 131, 81 A.2d 209. But the present statutory authority vested in an election board is vastly different from that which existed in 1951.

The current provisions relating to nominations by petition are contained in Art. 33, § 7–1. As we earlier noted, when a local election is involved, § 7–1(b)(2) requires such a petition to be "signed by not less than three percent of the registered voters who are eligible to vote for the office for which the nomination by petition is sought." But of particular significance here is § 7–1(g) which in pertinent part reads:

(1) The board shall *verify all legitimate signatures of persons who are registered voters* and who have signed a petition pursuant to ... this section. The local board or State Board, as the case may be, immediately upon completion of the verification process, shall notify the candidate of the number of signatures verified.

\* \* \* \* \* \*

(3) For an office to be filled by the voters of one county or the City of Baltimore, the board *shall verify any*

*legitimate signatures of persons who are registered to vote* and who have signed any petition pursuant to . . . this section, up to a number equal to 110 percent of the total number of signatures required by subsection (b)(2) of this section for nomination to the office sought. The board may verify additional signatures as it considers advisable. [emphasis supplied]

These provisions must be considered in connection with subsection (1) which states:

If the required number of signatures is not properly appended to a petition . . . it shall be declared insufficient, and the name of the proposed candidate may not be placed on the ballot.

When *Tawney* was decided, the Code contained nothing like § 7–1(g) and (*l*) with respect to nominating petitions.

Predecessors of the present provisions first appeared in the substantive revision of the Election Code enacted by Ch. 739, Laws of 1957; *see also* Art. 33, § 7–1(e), as adopted by Ch. 392, Laws of 1967. It is obvious that the legislature intended to accomplish some change by its use of the new language. What that intent is we think can be determined from an examination of the statute itself, giving effect to all its provisions. "Where the language of a statute is unambiguous, it should be given effect in accordance with the clear meaning of the words." *Blum v. Blum,* 295 Md. 135, 140, 453 A.2d 824 (1983).

What § 7–1(g) commands the board to do is to "verify all legitimate signatures." "Verify" means "[t]o prove to be true; to confirm; to establish the truth, correctness, or authenticity of . . . ." *New Webster Encyclopedia Dictionary of the English Language* p. 932. That which is to be authenticated is clear: the registered voter status of those who have signed the petition. It is only they who can affix "legitimate signatures" to a petition. The result of a failure to find enough "legitimate signatures" is clear also: the board may not place the candidate's name on the ballot.

The General Assembly, then, has adopted a procedure under which an election board is required to examine the signatures on a petition and to advise the candidate if, in the board's view, the petition does not contain at least the minimum number of names of registered voters. This can be beneficial to the candidate, who may have an opportunity to obtain additional signatures. Benefit to the voters is achieved as well, for if the board finds the petitions adequate, they are given some assurance of the validity of a candidacy. In any case, the legislature has transformed what was once a ministerial function to an investigative and fact-finding one.

This was recognized by the Attorney General in 1973 when he explained the nature of the verification requirement:

[S]ignature verification requires three basic substantive determinations . . . (1) is the person a registered voter of the appropriate jurisdiction; (2) has the person signed more than once for the same nominee; and (3) has the person signed petitions on behalf of more than one nominee for the same office.

58 Op.Atty.Gen. 313, 314 (1973).

■ It was apparent to the Attorney General, as it is to us, that under present § 7–1 an election board must do more than merely count the number of names on a petition. It must determine that those names are in fact the names of registered voters of the appropriate jurisdiction. Since 1973, the statute has not been materially amended so far as the verification process is concerned. This suggests that the legislature has acquiesced in the Attorney General's construction of the statute. *Tawney v. Board of Supervisors of Elections, supra,* 198 Md. at 128, 81 A.2d 209. But beyond this, we find support for our position in *Barnes v. State ex rel. Pinkney,* 236 Md. 564, 204 A.2d 787 (1964).

*Barnes* involved, among other things, the question of whether the Secretary of State lawfully could examine the signatures on a referendum petition filed pursuant to Art.

XVI of the Maryland Constitution, for the purpose of determining the validity of the signatures. The Secretary of State had in fact reviewed the signatures and, having concluded that the number of qualified signatures was insufficient, refused to place the referendum on the ballot. The Court of Appeals upheld the action of the Secretary of State. It examined then Art. 33, § 69 (1964 Supp.), which contained requirements as to the signing of petitions submitted under Art. XVI, but no explicit instructions to the Secretary of State as to verification of signatures. Speaking through Judge Oppenheimer, the court held:

> Clearly, the provisions of [Art. XVI] will be furthered if, by proper and reasonable means, a referendum petition is to be put upon the ballot only if it has the requisite number of genuine signatures of registered voters.

236 Md. at 571, 204 A.2d 787.

■ Because it was "the Secretary of State, the official designated in the Constitution to receive a referendum petition, who found the petitions to be fatally defective," 236 Md. at 576, 204 A.2d 787, the court concluded that the question had been properly kept off the ballot. The legislative directions as to verification of nominating petition signatures and omission of a name from the ballot if the board finds insufficient valid signatures are considerably more precise than those involved in *Barnes.* We hold that the appellee had the authority to review appellants' petitions and to keep their names off the ballot if he found, as he did, that they had not been signed by sufficient numbers of registered voters. The remaining question raised by appellants is whether the legislature had the power to delegate this authority to an administrative agency or official.

### Separation of Powers

Appellants say this delegation of power was unconstitutional, because it vested a judicial function in the Executive Branch in violation of Art. 8 of the Declaration of Rights. They claim that "[a]s legal documents, nominating petitions

can be rendered illegal [only] by actions and or adjudications of a court of law."

It is true that a passing dictum in *Tawney* gives some support to this argument. The Court of Appeals then observed that certain arguments advanced in that case could not "give the Supervisors of Elections any authority to pass upon such questions, which are essentially judicial in their nature." 198 Md. at 129, 81 A.2d 209. *But see Barnes, supra,* in which the court rejected an argument that the referendum should have been placed on the ballot absent a judicial determination of the validity of the signatures. 236 Md. at 575–76, 204 A.2d 787. In any case, what was before the court in *Tawney* was a question of statutory construction. As to that, Chief Judge Marbury, construing the former statutes, reasoned that "the Legislature did not intend that [the right of the voters to vote for candidates nominated by petition] should be taken away by any action of a purely ministerial and political body . . . ." 198 Md. at 129, 81 A.2d 209. As we have concluded, the legislative intent is now different. That intent is to be implemented unless there is some constitutional obstacle to doing so.

 We do not think there is. What we have here is a typical delegation of a fact-finding function to an administrative body or official. The trial court held that appellants did "not challenge the accuracy of the verification process undertaken by the Board" and in any case, the outcome of that process was subject to judicial review, as the proceedings below and in this court attest. The authority involved here may well be quasi-judicial. *Compare White v. Laird,* 127 Md. 120, 96 A. 318 (1915) (power of elections board to conduct recount involves exercise of discretion and is quasi-judicial). But the exercise of quasi-judicial authority by an administrative agency is not an unconstitutional usurpation of judicial powers at least when, as here, the administrative action is subject to judicial review. *Heaps v. Cobb,* 185 Md. 372, 379, 45 A.2d 73 (1945).

The Circuit Court for Baltimore City did not err when it denied appellants' Petition for Mandamus.