## ADAMS *v.* BOARD OF TRUSTEES OF EMPLOYEES' RETIREMENT SYSTEM OF CITY OF BALTIMORE

[No. 103, September Term, 1957.]

*Decided December 23, 1957.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Hyman A. Pressman* for the appellant.

*Shirley Brannock Jones, Assistant City Solicitor of Baltimore,* with whom were *Thomas N. Biddison, City Solicitor,* and *Hugo A. Ricciuti, Deputy City Solicitor,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

Bernard M. Adams, Jr. (the petitioner) filed an application with R. Walter Graham, Jr., et al., constituting the Board of Trustees of the Employees' Retirement System of Baltimore City (the Board), for *accidental disability* retirement. The Board retired the petitioner and awarded him an *ordinary disability* allowance but denied *accidental disability* benefits. The petitioner then filed a petition for a writ of *mandamus* to compel the Board to award him the accidental benefits originally applied for. After a hearing in the Baltimore City Court the petition was dismissed. From the order of dismissal the petitioner appealed.

The petitioner, a retired fire fighter, who became an employee of the Baltimore City Fire Department on July 8, 1942, was a willing and dependable worker for more than thirteen years. He was injured on October 6, 1955, while engaged in the performance of his duties as an ambulance attendant. A litter was being carried upstairs when the patient suddenly shifted her weight and caused the petitioner to alter his grip. He felt a deep pain in his lower back at the time, but remained on duty. During the night his back ached and stiffened and became sore and painful. After his shift had ended the following morning, the petitioner went to

the infirmary and explained to a fire department physician what had happened. The doctor examined him, found that he had a sprained back, took him off ambulance duty, and placed him on regular duty. The day after the accident the engine company lieutenant made a personal injury report to the chief engineer of the fire department relating briefly what had happened to the petitioner the night before and the doctor's diagnosis. On regular duty the petitioner worked around the engine house several weeks and then resumed ambulance duty. He worked one day, had trouble with his back again, and returned to regular duty. Another effort to resume ambulance duty had the same result as the first. Thereafter he remained on regular duty until March, 1956, when he filed a claim for accidental disability retirement. On one occasion in February, 1956, when he was holding a hose at a dump fire he was knocked down by a sudden change of water pressure, and the ache in his back was reactivated. In April, 1956, the petitioner withdrew his claim and went back to work. After one day of doing only routine work in the engine house, his back began aching again after he got home. Thereafter he did not return to work, and his claim for accidental disability retirement was revived.

Another ambulance attendant, who worked regularly with the petitioner for six years on ambulance duty, and had held the front end of the litter on the night of October 6, 1955, did not remember the accident when summoned, but at the hearing before the Board he testified that he had not noticed anything wrong and that the petitioner had not said anything about being injured. On this or a prior or subsequent occasion—it is impossible to determine with certainty from the record which occasion he had in mind—he had reminded the petitioner that if they had many more heavy ones he might have trouble with his back again. He interpolated the fact that the petitioner had had trouble with his back before, and then, when pressed to clarify that statement, added that the day he remembered the petitioner had just come back from trouble with his back—"lumbago or whatever it was". In reply to several questions by one of the trustees of the Board at the conclusion of his testimony, the witness stated that he

had no recollection of any remark made by the petitioner about any injury he suffered on October 6, 1955, but admitted that the petitioner could have made such a remark. Another fire fighter, who had also worked with the petitioner for six years, had never heard him complain of any trouble with his back until after the accident in October, 1955.

All of the medical reports show disability. The three physicians constituting the Medical Board, after they had examined the petitioner on May 5, 1956, and studied his medical reports, certified that he was unable to perform his duties and ought to be retired, that such incapacity is likely to be permanent, and that he had a "low back injury—acute ligamentary and muscular strain—possible displacement of disc." There were numerous other reports by other medical experts to the effect that the petitioner's condition was or could have been caused by the accident on October 6, 1955. The report to the Board of Fire Commissioners shows the chronology of events reported by the fire department physicians from time to time and their opinion to the effect that they did not believe that the petitioner's back pains and subsequent mental instability were due to an accident while in the performance of his duties, and it was evident that they suspected him of malingering. None had examined the petitioner on October 7, 1955, or shortly thereafter. Two of the physicians did not know whether the petitioner's condition was caused by lifting a patient on October 6, 1955, or some unreported strain while off duty. One of them admitted that he had no knowledge of any other strain. There was no report of any prior injury to the petitioner's back either while he was off or on duty. There had been two occasions—one before and one after October 6, 1955—when the petitioner had had lumbago, but the medical records show that the petitioner had no back strain or lumbago, or time off from either, during the period of six years, ten months and twenty-five days between December 12, 1948, and October 7, 1955. One of the fire department physicians explained that any type of back pain which develops while a fire fighter is working is usually recorded as a lumbar strain or back injury, but if it does not show up until the next day it is recorded as lumbago.

The trial judge denied the petition for a writ of *mandamus* because he concluded that the action of the Board in disapproving accidental disability retirement was an exercise of judgment and discretion, and that he was without authority to substitute his discretion for that of the Board.

Two questions were raised by the petitioner on the appeal: (i) is *mandamus* the proper remedy to contest the Board's finding?; and (ii) was the refusal of the Board to award accidental disability retirement arbitrary? The Board, in its brief and on oral argument, conceded that a writ of *mandamus* is the only remedy in a proper case to test the correctness of the Board's finding, but contends that the finding of the Board that the petitioner's disability was not the result of an accident under Section 6 (5) of the Pension Ordinance was supported by substantial evidence and therefore a writ of *mandamus* should not issue.

Sub-section (5) of Section 6 of Article 23 of the Baltimore City Code (1950), provides:

> "Upon application of a member, or of the head of his department, any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part, shall be retired by the Board of Trustees, provided that the medical board shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired."

The function of a court in reviewing a case such as this was clearly set forth in *Hecht v. Crook* (1945), 184 Md. 271, 40 A. 2d 673. As Judge Henderson said so well at pages 280-81:

> "* * * the question as to what decisions of an administrative agency are reviewable must turn upon the statute creating it, and upon the type and degree of discretion conferred upon the particular

agency. Courts have the inherent power, through the writ of mandamus, by injunction, or otherwise, to correct abuses of discretion and arbitrary, illegal, capricious or unreasonable acts; but in exercising that power care must be taken not to interfere with the legislative prerogative, or with the exercise of sound administrative discretion, where discretion is clearly conferred."

Again in *Heaps v. Cobb* (1945), 185 Md. 372, 45 A. 2d 73, this Court said at page 380, quoting from the California Law Review:

"'With respect to the issues of fact, the reviewing court examines the evidence taken by the administrative agency, not to re-weigh it, not to substitute the Court's judgment for that of the agency, but to determine whether the agency acted rationally, that is to say, that it did not arrive at its conclusion arbitrarily.'"

Thus it is clear that the function of the trial court was to determine whether the Board was arbitrary when it "disapproved the accidental disability retirement" for the petitioner by a vote of four to one. The trial court in effect found that the Board was *not* arbitrary. We believe that it *was*.

The Medical Board, having certified that the petitioner was mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that he should be retired, the ordinance makes it clear that the Board had to decide (i) whether the incapacity to perform his duty was the natural and proximate result of an accident which occurred while the petitioner was in the actual performance of his duty at some definite time and place, and (ii) if there was an accident, whether it was caused without wilful negligence on the part of the petitioner. There was absolutely no evidence of any negligence, wilful or otherwise, on the part of the petitioner. Assuming there was an accident, there is no substantial evidence that it occurred at any time or place other than on October 6, 1955, at the place where the litter was being carried upstairs in the actual per-

formance of the petitioner's duty. There was, of course, the testimony of a fellow worker who had not noticed anything wrong and had not heard the petitioner say anything about being injured, but admitted that the petitioner could have made such a remark. The fellow worker also recalled that the petitioner had had trouble with his back before, but it is not certain whether he was referring to October 6, 1955, or some other prior or subsequent date. Other than this testimony there is no proof that the petitioner had injured his back on some other occasion, and, if he had, there is no proof of when or where, and whether he was on or off duty. Obviously the witness, who had worked with the petitioner for six years, was confused because the medical records show that the petitioner had had no back strain or lumbago, or time off from either, during the six year period the witness had worked with him on ambulance duty. For this reason the testimony of the fellow worker had little or no evidentiary value as to the fact of prior back trouble. On the contrary there is ample testimony by the petitioner, corroborated by the engine company lieutenant and the fire department physician who first examined him, as to how, when and where he was injured. Besides, there was the testimony of another fire fighter, who, during the prior six year period, had never heard the petitioner complain of any trouble with his back. Thus the only *real* decision the Board had to make was whether the petitioner became incapacitated as the natural and proximate result of the only accident of which there was any proof.

Of course, if the action the Board took had been supported by the evidence, or if there had been any disputed facts before it, its decision would not be open to judicial reversal. *Heaps v. Cobb, supra,* at p. 385. But there was no *real* dispute as to any of the essential facts. In fact the evidence unmistakably supports the claim of the petitioner for an accidental disability retirement as prescribed by the ordinance. Thus, there was no basis for the exercise of judgment or discretion. *Heaps v. Cobb, supra,* at p. 386. Yet, the Board decided, by a majority vote, without assigning any reason therefor, to disapprove accidental disability retirement. In so doing we

think it is clear that the Board was arbitrary in arriving at the conclusion it did because its action was not supported by the evidence. *Heaps v. Cobb, supra,* at p. 380. Instead, the Board had the mandatory duty of approving the application of the petitioner for accidental disability retirement.

While the question was not raised either before the Board, in the trial court, or here on appeal, the Board may have decided that the injury to the petitioner was not accidental in law. As previously stated, the Board gave no reason for its finding, but if it is assumed that the Board considered the question and decided that the injury was not accidental in law, it was in error. The question of what constitutes an accidental injury usually arises in compensation cases, but, as was said in the *Heaps* case, *supra,* at p. 383, the analogy between them and pension cases is so close that on many questions there is no legal distinction in applying the principle involved. In Maryland injuries are compensable only when they are accidental, that is, resulting from some unusual strain or exertion or some unusual condition in the employment. *Rieger v. Wash. Sub. San. Comm.* (1956), 211 Md. 214, 126 A. 2d 598. However, the occurrence of unusual circumstances outside of the natural and ordinary incidents of the work would constitute accidental injury. *Coal Co. v. Chisholm* (1932), 163 Md. 49, 161 A. 276. See also *Geipe v. Collett* (1937), 172 Md. 165, 190 A. 836; *Mayor & City Council of Balto. v. Schwind* (1938), 175 Md. 60, 199 A. 853; *Baltimore & Ohio R. R. v. Zapf* (1949), 192 Md. 403, 64 A. 2d 139. Cf. *Stancliff v. H. B. Davis Co.* (1955), 208 Md. 191, 117 A. 2d 577. In the instant case, although the mere lifting of the litter was usual employment, the sudden shifting of the patient in the litter, requiring the petitioner to alter his grip was an unusual circumstance which caused the deep pain in his lower back and eventually incapacitated him.

The order of dismissal is reversed.

> *Order reversed and case remanded for the issuance of a writ of mandamus in accordance with this opinion, the appellees to pay the costs.*