## VAUGHAN *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 31, September Term, 1962.]

*Decided October 23, 1962.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, HORNEY and SYBERT, JJ.

*John C. Evelius,* with whom were *O'Connor & Preston,* on the brief, for appellant.

*Blanche G. Wahl, Assistant City Solicitor,* with whom was *Francis B. Burch, City Solicitor,* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

The appellant Vaughan was a firefighter in the Fire Department of the Mayor and City Council of Baltimore and a member of the Employees' Retirement System of the City who was denied accidental disability benefits upon retirement by the Board of Trustees of the System, and by the Baltimore City Court in its dismissal of his petition for mandamus against the Board.

Subsection 5 of Section 6 of Article 23 of the Baltimore City Code (1950 Ed.) provides that if a member of the Retirement System had been totally and permanently incapacitated for duty

"as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part," he shall be retired and under Subsection 6 of Section 6 and receive a pension of sixty-six and two-thirds per cent of his average final compensation. If retirement is ordinary, that is, not caused by accidental injury, the maximum pension is one-quarter of the average final compensation. This Court has held that, both in cases under the ordinance quoted above and compensation cases, an injury, to be accidental, must result from some unusual strain or exertion of the employee or some unusual condition in the employment. *Adams v. Board of Trustees,* 215 Md. 188, 196 *cf. Heaps v. Cobb,* 185 Md. 372, 383.

On December 13, 1960, Vaughan suffered a heart attack while shovelling snow from the driveways and sidewalks adjacent to the premises of Engine Company No. 54, at Mary Avenue and Belair Road, where he was stationed. He filed an application for accidental disability retirement, claiming that he had had an accident during the performance of his duty when he suffered the heart attack. The Board, after a hearing, denied his application. Although it found he was suffering from arteriosclerotic heart disease and probably had sustained a coronary infarction while he was engaged in his usual employment, and was disabled, a majority concluded that the infarction was not the natural and proximate result of an accident but rather the result of the normal progress of arteriosclerotic heart disease from which he suffers. Vaughan filed a petition for mandamus against the Board, praying that the members be directed to approve his claim. Judge Foster, applying the standards spelled out in the *Heaps* and *Adams* cases, found the Board's challenged action to be supported by evidence and not arbitrary, capricious or unreasonable.

The court pointed out that, if indeed it was not conceded, the record supported the common knowledge that it is one of the usual duties of a firefighter to shovel snow in order to keep the aprons and walkways about a firehouse always clear so the equipment will be able to roll at all times, as the regulations of the Fire Department require. Judge Foster held that although snow removal obviously was not a daily or a monthly

activity, it was part of the regular, usual and ordinary duties of a fire fighter and not unusual or extra work, so that it could not be said that Vaughan's disability was caused by some unusual or extraordinary condition in his employment not usually and naturally incident thereto. We think the reasoning of the trial judge sound and his conclusions correct.

Vaughan argues that he was subjected to unusual strain or exertion in shovelling, because the snowfall was heavy (from five to seven inches) and the snow wet, and the fall the first of the year. Wet snow is not unusual in Maryland. The pain in Vaughan's chest came after the second period of shovelling on December 13. The firefighters had first cleared the aprons and walks at about five o'clock in the afternoon and then shovelled them clear again, starting approximately four hours later, at about nine o'clock.

The shovelling which apparently produced the heart damage was not of the total five to seven inches fall, since that which fell prior to five o'clock had been cleared away, and snow continued to fall after the second shovelling. There was testimony that it was not unusual for the firemen to shovel snow two or three times in one night. Vaughan did not allege or show any fall, blow, slip or twist, wrench, sudden jerk, or other external happening of an accidental nature.

We find the case before us to be indistinguishable in principle from cases such as *Heil v. Linck,* 170 Md. 640 (in which the employee dropped dead fifteen minutes after coming out of a meat cooling room in which the temperature was thirty-two degrees into the market where it was eighty-nine), or *Miskowiak v. Bethlehem Steel Co.,* 156 Md. 690 (in which the employee worked all of a hot, sticky day taking red-hot bars from a blast furnace and collapsed, and later died), or *Stancliff v. H. B. Davis Co.,* 208 Md. 191 (in which the employee had a rheumatic heart and died after coughing and vomiting allegedly from fumes inhaled at work, which his beneficiaries urged aggravated the heart condition and brought on death). In *Stancliff* we reviewed the earlier cases and reiterated that in Maryland, unlike many other jurisdictions, the phrase "accidental injury" does not include unexpected results not produced by accidental causes, and that this Court consistently

has held that for injury to be accidental it must result from some unusual strain or exertion of the employee or some unusual condition of the employment. Later cases have adhered to the strict Maryland construction. See *Rieger v. Wash. Sub. San. Comm.*, 211 Md. 214; *Eastern Shore Co. v. Young*, 218 Md. 338. *Cf. Cipriano v. Greenbelt Consumers*, 226 Md. 577; *Plastic Products, Inc. v. Benkoe*, 224 Md. 256.

In *Stancliff* we said (p. 203 of 208 Md.): "Everything that was done or happened while he was working was naturally and ordinarily incident to the operation of the department as it was customarily carried on. There is no doubt that the coughing and vomiting were unusual and unexpected but nothing else, in action or environment, was." We think the words are applicable here. The result of the shovelling was unexpected by Vaughan and could be considered accidental but the cause was not.

The decision of the Board of Trustees was supported by evidence and was not arbitrary, capricious, unreasonable or illegal. The lower court did not err in dismissing the petition for mandamus.

*Order affirmed, with costs.*