SEVERN *v.* MAYOR AND CITY COUNCIL OF
BALTIMORE ET AL.

[No. 38, September Term, 1962.]

162

*Decided December 7, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, MARBURY and SYBERT, JJ.

*Samuel W. Campanaro* and *Charles T. LeViness* for the appellant.

*Blanche G. Wahl, Assistant City Solicitor of Baltimore,* with whom was *Francis B. Burch, City Solicitor,* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order dismissing a petition for a writ of mandamus sought by the appellant to require payment of accidental death benefits on account of the death of her husband, who had been a Fire Fighter employed by the City of Baltimore (the City). The appellees are the City and the members of the Board of Trustees of the Employees' Retirement System of the City of Baltimore (the Board).

Robert E. Severn, the husband of the appellant, had been a

member of the Fire Department and of the Employees' Retirement System for approximately fifteen years prior to December 1, 1959. On that date, in the discharge of his duties, he was engaged in fighting a several-alarm fire. While so engaged, he suffered a heart attack—a coronary occlusion which caused a myocardial infarction. After a period of hospitalization he returned to his home and his condition improved, but he was never able to return to duty as a Fire Fighter. In April, 1960, he filed a claim for disability benefits under Art. 23 of the Baltimore City Code (the Pension Ordinance). His claim was referred by the Board to its advisory Medical Board. The latter reported in May that Severn had a myocardial infarction, that he was physically incapacitated and that his incapacity was likely to continue, and recommended that he be retired. The Board conducted two hearings on the claim—the first on August 8, 1960, when several witnesses, including Severn and Dr. Vollmer, a member of the Medical Board, were heard, and the second on August 16, 1960, when Dr. Moore, a Fire Department physician who had treated Severn at the scene of the fire, was heard. The Board found that "Severn was totally and permanently incapacitated for duty by reason of a myocardial infarction, as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part, and on August 16, 1960, awarded him accidental disability benefits." (The language quoted is taken from a statement in the Board's opinion of March 20, 1961, filed in the death case, which, *inter alia*, reviewed the earlier proceedings. The findings quoted are substantially in the words of the accidental disability benefit provisions of § 6 (5) of the Pension Ordinance.) Because of Fire Department regulations Severn was to continue on the payroll for one year after the accident and the disability award was then to become effective.

On leaving the hospital Severn employed a private physician who saw him rather frequently—but at increasing intervals. This doctor's last visit to Severn during the latter's life was on September 15, 1960, at which time Severn's condition ap-

peared to be about as it had been previously. This was that he had compensated fairly well for the infarction and was getting around normally, even though he could not return to work as a Fire Fighter. The patient then said that "he felt good but very nervous," and the doctor gave him something for his nerves. Two days later, on September 17, Severn died suddenly. His doctor was called, concluded that a coronary occlusion was the cause of death, and signed the death certificate accordingly. There was no autopsy.

Following Severn's death his widow filed her claim under § 6 (9) of the Pension Ordinance (as amended) for the accidental death benefit thereunder. Paragraph (a) of that section first provides for the payment of a member's accumulated contributions to his designated beneficiary or his estate. It and paragraph (b) further provide with regard to accidental death in line of duty:

> "* * * and if, upon the receipt of evidence or proofs satisfactory to the Board of Trustees that such death was the result of injuries sustained in the line of duty or was directly attributable to the inherent hazards of the duties performed by such employee, and the Board of Trustees shall decide that the death was not caused by wilful negligence on the part of the member, there shall be paid in lieu of the ordinary death benefit provided by the contributions of the City, a pension of one hundred per centum of the current compensation of such employee;

(b) To his widow to continue during her widowhood * * *."

Severn's health record had been good. It showed only one episode which might have even suggested any heart trouble. The episode occurred in 1955 and was apparently due to indigestion. An electrocardiogram made at the time disclosed no abnormality, and Severn continued in active service for four years before his heart attack of December 1, 1959.

The principal factual controversy in this case is whether or not Severn's death was due to the injury which caused or

"triggered" his disability. Medical opinion was divided on the question. It was generally agreed that Severn died of a coronary occlusion (though one or two other possibilities were considered), and that he had had a coronary occlusion on the night of the fire. His own physician testified at a hearing before the Board on January 9, 1961, that in his opinion death was due to a continuation of the heart attack suffered at the fire. At a subsequent hearing on February 6, 1961, of which neither the claimant nor her counsel is shown to have had notice and at which neither appears to have been present, Dr. Vollmer expressed the opinion that Severn had had "coronary artery disease" which antedated his first heart attack at the fire and that his second coronary occlusion was not a result of the accident. On March 20, 1961, the Board filed the opinion already referred to, which reviewed the proceedings up to that date, referred to the testimony of the two physicians on the death claim and contained the following findings of fact:

> "From the testimony of these physicians, the Board determined that an accidental death within the meaning of the provisions of Section 6(9)(a) had not been made out. The Board finds as facts that while Mr. Severn originally suffered an accident while in the performance of duty, his subsequent death was the result of coronary artery disease which antedated his accidental injury and was neither the result of injuries sustained in the line of duty nor directly attributable to the inherent hazards of the duties performed by him."

The Board, with one of its five members not concurring, denied the application for accidental death benefits.

On April 10, 1961, at the request of the claimant or her then counsel (not her counsel on this appeal), the Board reopened the matter and heard the testimony of Dr. Moore, the Fire Department physician who had treated Severn at the scene of the fire. His opinion, which he stated could not be positive in the absence of an autopsy, was that "the strongest possibility" was that Severn's first heart attack was respon-

sible for his death. He stated that "the common cause of someone dying following a coronary occlusion is usually a rupture of the scar."

Following this hearing the Board wished to have the opinion of an independent cardiac expert. The record contains a copy of a letter dated May 19, 1961, from the Executive Secretary of the Board to the claimant's then counsel in reply to counsel's letter of May 18 (which does not appear in the record) stating that a cardiologist (whom the Board had evidently considered consulting) was out of town and was not expected to return for several weeks. This letter concluded thus: "It is possible our Board may request an opinion of another cardiologist and if this is done, I will forward you a copy of our correspondence." The record discloses no reply to this letter. On July 19, 1961, the Executive Secretary wrote another letter, a copy of which is in the record, to the claimant's then counsel, the body of which reads as follows:

"As you know, our Board of Trustees, in view of the differing opinions expressed in the testimony of Dr. Kirk Moore and Dr. Frederick Vollmer, decided that before making a final determination on the claim of Mrs. Severn it wished to have a medical opinion by an independent heart specialist. Accordingly, the file in this case was reviewed by Dr. Frank W. David, [sic] Jr., 11 East Chase Street. Just this morning I received Dr. Davis' report which will be submitted to our Board of Trustees at its meeting on August 7.

I will advise you immediately after that meeting of the disposition of our Board."

No reply to this letter appears in the record.

On August 9, 1961, the Executive Secretary of the Board wrote the claimant's then counsel a third letter (a copy of which is also in the record) referring to the letter of July 19, and the Board's feeling that "the opinion of an independent heart specialist should be sought" and stating that accordingly the entire file in this case had been referred to Dr. Frank W. Davis, Jr., with the request that he study all the records and submit a report thereon. This letter further stated that

his report, dated July 11, 1961, had been submitted to the Board at its meeting on August 7, 1961, and that after consideration of the report, the Board took action reaffirming its opinion of March 20, 1961. The letter also stated that a copy of Dr. Davis' report was enclosed. This report recited the documents which Dr. Davis had examined and gave as his opinion, which supported that of Dr. Vollmer, "that the overwhelming evidence would suggest that death was not directly related to the initial myocardial infarction, but rather the result of a new episode in the progression of the underlying disease process, coronary atherosclerosis. Any conclusion which attempts to relate death to the initial attack would assume a complication which is statistically much less likely (although possible)."

The record indicates no further proceedings before the Board. The petition in the present case was filed October 26, 1961, and the respondents' answer was filed November 14, 1961. On February 8, 1962, a jury trial was waived by both sides, the case was submitted to Judge Foster apparently on the pleadings and the records of the Board, and briefs were filed. Judge Foster found that there was substantial evidence to support the findings of the Board, that the Board had exercised its discretion in acting thereon, and that there was nothing to show that its action was arbitrary, capricious, unreasonable or illegal; and he accordingly denied the petition. Judgment was entered for the respondents for costs on February 13, 1962. On March 9, 1962, the appellant's trial counsel (one of whom had represented her before the Board) struck out their appearance, her present counsel entered the case and this appeal was filed.

On appeal the claimant contends that the action of the Board in denying the widow's accidental death benefit was arbitrary, capricious and unsupported by substantial evidence.

The Pension Ordinance makes no provision for appeal, but there is no dispute that a court of law has jurisdiction to review the validity of the action of the Board by mandamus proceedings. *Hecht v. Crook,* 184 Md. 271, 40 A. 2d 673; *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73; *Adams v. Board*

*of Trustees,* 215 Md. 188, 137 A. 2d 151. Whether the writ should issue or not is another question. *Ipes v. Board of Fire Comm.,* 224 Md. 180, 167 A. 2d 337.

In the comprehensive brief submitted on behalf of the appellant, the analogy between pension cases and workmen's compensation cases is urged (citing *Adams v. Board* and *Heaps v. Cobb,* both *supra*), and many authorities are cited to support the proposition that where accidental injury precipitates or aggravates a latent disease or condition, death or disability is considered as resulting from the injury. See, for example, *Kauffman Construction Co. v. Griffith,* 154 Md. 55, 139 A. 548, and *Dickson v. Beasley,* 146 Md. 568, 126 A. 907. The difficulty with this argument as applied to this case is that there was medical evidence before the Board to the effect that this was not the situation. On the record before the Board, we cannot say that the Board was arbitrary, capricious or unreasonable in refusing, on conflicting expert medical opinions, to accept the views favorable to the claimant's contentions. We agree with Judge Foster that it is quite evident that the Board did exercise its judgment and discretion in reaching its conclusion on the conflicting evidence.

The appellant, however, makes a further argument to the effect that the Board acted in an arbitrary manner in denying to the claimant any opportunity to cross-examine either Dr. Vollmer or Dr. Davis with regard to their opinions and that it was improper for the Board to take their opinions into consideration in reaching its conclusion. This second branch of the contention is rested in part upon the lack of cross-examination and in part upon allegedly improper procedure on the part of the Board in accepting their testimony or opinions in view of the provisions of § 5 (12) of the Pension Ordinance. We shall deal with this second ground first.

The section just referred to directs the Board to appoint a Medical Board, which shall arrange for and pass upon all medical examinations required under the provisions of the Pension Ordinance, and shall investigate all essential statements and certificates by and on behalf of a member in connection with an application for disability retirement, and shall report in writing to the Board its conclusions and recommendations up-

on all the matters referred to it. This section also provides that "[i]f required, other physicians may be employed to report on special cases." Severn's disability claim was referred to and reported upon by the Medical Board. This section does not *require* that applications for death benefits be referred to the Medical Board, though clearly they may be. It appears that the death claim was not so referred but one member of the Medical Board gave his opinion to the Board (of Trustees). We find nothing in § 5 (12) to prohibit this, and we think that the employment of Dr. Davis was plainly warranted by this section. We, therefore, find the appellant's claims on this phase of the matter not to be well founded.

The much more serious question is the absence of any opportunity for cross-examination of the two medical witnesses whose opinions were adverse to the appellant's claim. No rules of procedure of the Board are in evidence. The Pension Ordinance itself makes no express provision relating to the conduct of hearings or the right of cross-examination. Such a right is expressly provided for under the Administrative Procedure Act, Code (1957), Art. 41, §§ 251, 252; but this Act is not applicable to the Board which is a City and not a State agency. We may assume (though we think it unnecessary here so to decide) that ordinarily the right of cross-examination is a necessary incident of a fair hearing on a contested issue of fact which is to be determined by an administrative agency in the exercise of quasi-judicial power. See *Temmink v. Board of Zoning Appeals*, 205 Md. 489, at 497, 109 A. 2d 85 (where the appellee Board relied heavily upon a report from the Planning Office, which was not received until after the hearing and was not introduced into evidence and its author or authors were not subject to cross-examination) ; Oppenheimer, *Administrative Law in Maryland*, 2 Md. L. Rev. 185, at 203; Davis, *Administrative Law Treatise*, §§ 7.02, 14.15; Davis, *The Requirement of a Trial-Type Hearing*, 70 Harv. L. Rev. 193, at 198-99, 275; 2 Am. Jur. 2d, *Administrative Law*, § 424, p. 233, at 234. Cf. *Greene v. McElroy*, 360 U. S. 474, at 496, 508; and *Bayshore Industries v. Ziats*, 229 Md. 69, 74-76, 181 A. 2d 652 (which discussed,

but did not decide the question of denial of a fair hearing before a Commission).

The difficulty with the appellant's contention on this point is waiver. Though the appellant's counsel was not informed of Dr. Vollmer's testimony in the death case until after it had been given, he was furnished with a copy of it and sought and obtained a reopening of the case to produce Dr. Moore's testimony to rebut it. The record of the hearing at which Dr. Moore testified makes this quite clear, yet it discloses no objection to the consideration of Dr. Vollmer's testimony and no request that he be recalled for cross-examination. The difference of medical opinion developed on the reopening of the case was the reason for the Board's calling in a heart specialist for a report. Furthermore, though the appellant's brief asserts that her "counsel did not even see the report [of Dr. Davis] or know of its existence, until after the Board had acted upon it adversely to her interests," it seems that the letters of May 19 and July 19, 1961, from the Executive Secretary of the Board to the appellant's former counsel, to which we have referred, must have been overlooked when this statement was made. Plainly, her former counsel was informed of the Board's desire to have the advice of a cardiologist and was informed that Dr. Davis had been consulted, that his report had been received and that it would be submitted to the Board at its meeting on August 7th. The record shows no objection on the part of the appellant's then counsel, no effort or request on his part to attend the meeting of the Board and no request that Dr. Davis be present and available for cross-examination.

Failure to object in any way or at any time to the procedures followed by the Board, notwithstanding knowledge thereof and opportunity to object (and, indeed, apparent acquiescence therein), we think, amounts to a waiver of objections to the admission in evidence and consideration by the Board of the testimony of Dr. Vollmer and the report of the other doctor, Dr. Davis. Such waiver prevents the appellant from raising these objections in these proceedings for review of the Board's action. See *Tucker v. American Smelting & Refining Co.,* 189

Md. 250, at 254, 55 A. 2d 692, where an issue not passed upon by the Board in an Unemployment Compensation case was held not properly before the trial court or this court, and *Bethlehem Steel Co. v. Carter,* 224 Md. 19, 22-25, 165 A. 2d 902, where waiver of delay in giving notice of a claim under the Workmen's Compensation Act was held to result from the employer's failure to raise the question at a hearing before the Medical Board and by a statement thereat that the only issue was the extent of disability. See also *Spiller v. Atchison, T. & S. F. Ry. Co.,* 253 U. S. 117, 130; *Opp Cotton Mills, Inc. v. Administrator,* 312 U. S. 126, 155; [1] *In re McGovern Dairy Products, Inc.,* 60 N. J. Super. 163, 158 A. 2d 689, affd. per curiam, 31 N. J. 601, 158 A. 2d 689; *Martin v. Wolfson,* 218 Minn. 557, 16 N. W. 2d 884; *NLRB v. Townsend,* 185 F. 2d 378 (C.A., 9), cert. den. 341 U.S. 909; 2 Am. Jur. 2d, *Administrative Law,* § 425; 73 C.J.S., *Public Administrative Bodies and Procedure,* § 177. Cf. *County Comm'rs of Anne Arundel Co. v. Buch,* 190 Md. 394, 404, 58 A. 2d 672, and cases therein cited as to the necessity of producing evidence before an administrative body before seeking a review of its decision. There are several cases under the Workmen's Compensation Act reaching the same result as the *Tucker* case on the basis of the limited scope of judicial review under that Act. See, for example, *Caled Products v. Sausser,* 199 Md. 514, 86 A. 2d 904.

The appellant urges that the Board's consideration of Dr. Vollmer's testimony and of Dr. Davis' report shows arbitrary conduct on its part. Assuming but not deciding that waiver does not apply fully to this argument, we do not agree with it. This evidence was before the Board without objection, and we think that the Board could consider it, just as a court or jury may consider hearsay evidence admitted without objection. We may add that the very fact that the Board sought the opinion of an outside heart specialist indicates the opposite of arbitrariness and shows a desire to get impartial, competent advice on an apparently difficult medical question.

---

1. The rule in the Supreme Court is not inflexible. See 3 Davis, *Administrative Law Treatise,* § 20.06.

172

A further obstacle to the appellant's arguments based on the alleged denial of the right of cross-examination is that the question does not clearly appear to have been tried and decided by the lower court. Md. Rule 885. The question is not referred to in Judge Foster's opinion. Though it was raised in the petition as to both Dr. Vollmer's testimony and Dr. Davis' report, it would not seem to have been pressed in the trial court.

Since our holding is based on waiver, it is not to be taken as implying our approval of any administrative practice in contested cases which would involve hearing a witness without the presence of, or notice to, the claimant or would deprive the claimant of the opportunity for cross-examination of a witness or of an expert whose report may serve as the basis for administrative decision.

The appellant's objections to the sufficiency of the data submitted to Dr. Davis do not impress us as having any force.

We may repeat that the relief sought was a direction to the respondents to pay the appellant's claim. There was, we note, no effort to seek an order requiring the Board to reopen the case to permit cross-examination. Cf. *County Comm'rs v. Buch, supra.* In view of the waiver above discussed, it scarcely seems that such an effort could have been successful and we shall therefore not discuss it further.

We cannot say that the action of the Board in denying the appellant's claim upon the evidence before it was arbitrary, capricious or unreasonable. We accordingly affirm the order and judgment appealed from.

*Order and judgment affirmed, with costs.*