BAKER *v.* BOARD OF TRUSTEES OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE

[No. 12, September Term, 1973.]

*Decided October 10, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*John J. Dilli, Jr.*, for appellant.

*Milton Ely* and *Neil J. Lewis, Assistant City Solicitors*, with whom were *George L. Russell, Jr., City Solicitor*, and *Simon Schonfield, Assistant City Solicitor*, on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Lawrence C. Baker, Sr., who retired as a marine engineer with the Baltimore City Fire Department, sought an award of accidental disability benefits from the Board of Trustees of the Employees' Retirement System of the City of Baltimore (the Board). When the Board denied the benefits which he had sought, Baker brought an action of mandamus against the Board in the Baltimore City Court. From a judgment of that court in favor of the Board which had the effect of denying Baker relief and affirming the action of the Board, Baker has appealed.

The applicable statute is Baltimore City Code (1966) Art. 22. Section 6 (c) of that Article provides for ordinary disability retirement benefits.

"(c) *Ordinary disability retirement benefit.* Upon the application of a member in service or of the head of his department, any member who has had five or more years of creditable service may be retired by the Board of Trustees, not less than thirty and not more than ninety days next following the date of filing such application, on an ordinary disability retirement allowance, provided that the medical board, after a medical examination of such member, shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired."

An accidental disability benefit may be awarded under § 6 (e):

"(e) *Accidental disability benefit.* Upon application of a member, or of the head of his department, *any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part,* shall be retired by the Board of Trustees provided that the medical board shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired." (Emphasis supplied)

Baker was retired for disability and received the benefit provided for by § 6 (c); it is his entitlement to the additional benefit provided for by § 6 (e) which is here at issue.[1]

The facts which underlie the controversy are these. Baker entered the employ of the Fire Department in 1954. At the

---

1. Art. 22, § 6 (f) provides that an accidental disability benefit shall be an annuity, based on contributions, plus 66²/₃% of average final compensation.

time of his retirement, he was 69 years of age, a member of the retirement system, and assigned to the Fireboat *P. W. Wilkinson* as marine engineer. On 31 May 1971, while on duty, he had struck his head on an overhead pipe on the *Wilkinson*, and had suffered a scalp laceration — an injury which he had reported to the Fire Department. On 24 August 1971, he struck his head a second time, and suffered a similar laceration — an injury which he did not report.

Immediately following the 24 August incident, Baker went on his vacation; on 26 August, he saw Dr. Emmett Queen, a Fire Department physician, who referred Baker to the United States Public Health Service Hospital in Baltimore, and on 30 August, Baker saw Dr. Paul Gustman at the Hospital. On 1 September, Baker returned to duty and continued working until 11 September, when he sustained a heart attack while working in the engine room of the *Wilkinson*, and was admitted to Mercy Hospital under the care of Dr. Walter Welzant, another Fire Department physician. Baker was released from the Hospital on 5 October 1971, and subsequently was unable to resume his duties.

The thrust of Baker's argument is that the incapacitating heart attack which he suffered on 11 September was a result of striking his head on 24 August. He buttressed this assertion by his testimony that immediately following that incident, he experienced "pain in my chest," "cold sweats," was "dizzy," felt "lousy all over," and by the further circumstance that there was medical testimony recognizing no significant difference between the electrocardiogram taken at Mercy Hospital on 11 September and that taken at the Public Health Service Hospital on 30 August. Baker also finds comfort in Dr. Gustman's medical report which noted indications of a myocardial infarction and concluded that "the most probable date for this heart attack was approximately two weeks prior to his visit of 8/30/71 when he had chest pains, dizziness and struck his head."

In contrast, the Board could have considered, as it apparently did, the countervailing testimony. First, there was Baker's own testimony that he had suffered from

hypertension in 1962. Next, the testimony of Dr. Frederick J. Vollmer, a Board consultant, who testified that Baker had suffered from essential hypertension since 1962; from arteriosclerotic cardiovascular disease prior to his injury, and from an acute myocardial infarction on 11 September 1971. In conclusion, Dr. Vollmer said, "[T]he symptoms that he [Baker] describes after having raised up and hit his head, the symptoms he described after that are much more typical of head injury than they are of a heart attack as such."

Dr. Kirk Moore, the Fire Department's Chief Surgeon, testified that his records showed that Baker had been treated in 1962 for essential hypertension, and responding to a question as to the causal connection between the head injury and the heart attack, Dr. Moore said:

> "I mean, it was obvious that he didn't have a myocardial infarction prior to his admission to the hospital. Therefore something must have shaken it off.
>
> "He certainly was a good candidate for it, really, many years ago with that high blood pressure. Something set him off. And with the lack of knowledge of any previous injury or exertion, I would reasonably say that they were connected."

Baltimore City Code (1966) Art. 22 makes no provision for appeal from the decisions of the Board, but there is no doubt that a court of law has jurisdiction to review the validity of the action of the Board by mandamus proceedings to determine whether the action of the Board was arbitrary, capricious or unreasonable, *Severn v. Baltimore City*, 230 Md. 160, 167-68, 186 A. 2d 199, 202-03 (1962) and cases there cited.

From all the testimony there was substantial evidence from which the Board could have reasonably found, as it apparently did, that Baker had a predisposition toward this sort of attack and that his head injury was not the direct cause of the myocardial infarction. This meets the test set out in *Heaps v. Cobb*, 185 Md. 372, 378-79, 45 A. 2d 73, 76 (1945):

"Administrative boards in general may be said to act in a quasi judicial capacity insofar as they have the duty to hear and determine facts and, *based on them*, to make decisions. Moreover, such decisions carry with them the presumption of validity and, where the statute or ordinance provides for an appeal to the courts, will not be disturbed on review if the record shows substantial evidence to sustain the findings." (Emphasis in original)

Particularly apposite here are two cases in which accidental disability benefits were denied to firemen who sustained injuries while shoveling snow, *Voss v. City of Baltimore*, 246 Md. 345, 228 A. 2d 295 (1967) (back injury) and *Vaughan v. Mayor & City Council of Baltimore*, 229 Md. 547, 184 A. 2d 842 (1962) (coronary infarction sustained by fireman with history of arteriosclerotic heart disease). As Judge Horney, speaking for the Court, said in *Voss*, 246 Md. at 353, 228 A. 2d at 299,

"[T]he injury, to be accidental, must result from some unusual strain or exertion or some unusual condition. . . . And if the resulting disability is ordinary instead of accidental, as in the case here, a pension is not allowable."

In *Vaughan*, the Court, speaking through Judge Hammond, cited *Stancliff v. H. B. Davis Co.*, 208 Md. 191, 117 A. 2d 577 (1955) and said, at 550-51 of 229 Md.,

"[T]he phrase 'accidental injury' does not include unexpected results not produced by accidental causes . . . it must result from some unusual strain or exertion of the employee or some unusual condition of the employment."

Putting it another way, an unexpected result attributable to a predisposition to a pre-existing physical condition is not an accidental injury.

The result reached by the Board is entirely consistent with that reached in *Severn v. Baltimore City, supra*, where

"The principal factual controversy in this case is

whether or not Severn's death was due to the injury [a coronary occlusion suffered while fighting a fire] which caused or 'triggered' his disability. Medical opinion was divided on the question. It was generally agreed that Severn died of a coronary occlusion (though one or two other possibilities were considered), and that he had had a coronary occlusion on the night of the fire. His own physician testified at a hearing before the Board on January 9, 1961, that in his opinion death was due to a continuation of the heart attack suffered at the fire. At a subsequent hearing on February 6, 1961, of which neither the claimant nor her counsel is shown to have had notice and at which neither appears to have been present, Dr. Vollmer expressed the opinion that Severn had had 'coronary artery disease' which antedated his first heart attack at the fire and that his second coronary occlusion was not a result of the accident." 230 Md. at 164-65, 186 A. 2d at 201.

There, we upheld the Board's denial of accidental death benefits.

In *Williams v. McCardell*, 198 Md. 320, 84 A. 2d 52 (1951), a Fire Department lieutenant who had suffered a coronary thrombosis sought an allowance of accidental disability benefits, relying on six occasions during the years 1942-1948 when he had experienced chest pains or pains in the chest and back while on duty. The lieutenant's own physicians were of the opinion that the heart disease was the result of his firefighting duties. The Board's physicians were of a contrary opinion, that the thrombosis was attributable to arteriosclerosis. Our predecessors found that the Board's denial of accidental disability benefits being supported by substantial evidence, was not arbitrary.

While we propose to uphold the result reached by the Board on the ground that there was substantial evidence to sustain its decision, we are somewhat nettled by an exchange which we find at the conclusion of the transcript of the hearing. When the Board announced its denial of Baker's

request for retirement on grounds of accidental disability, his counsel inquired:

"May I ask, if it's in order, the basic reasons for the denial?"

Mr. Lidinsky, the chairman of the Board, replied:

"We don't give any reasons at the time of the decision."

The Board's counsel then elaborated:

"The law doesn't require that the Board, the Pension Law does not require that the Board state its reasons for its conclusion."

As long ago as *Adams v. Board of Trustees*, 215 Md. 188, 195, 137 A. 2d 151, 155 (1957), we reversed, as not supported by the evidence, an action taken by the Board without a finding of fact, or an assignment of reasons for the result reached. Only the circumstance that the record before us makes it clear that the Board could have reasonably reached the result which it did, *Heaps v. Cobb, supra*, 185 Md. at 380, 45 A. 2d at 76, saves this case from a similar fate. To be certain that the teaching of *Adams* is not again overlooked, we propose to remand, for appropriate findings of fact, any case which hereafter reaches us in the posture of this one.

This is no more than a recognition of the fundamental right of a party to be apprised of the facts relied upon by the agency, *Blue Bird Cab Co. v. Department of Employment Security*, 251 Md. 458, 466, 248 A. 2d 331, 335 (1968) and, even in the absence of a statutory provision, is frequently required by a court as an aid to judicial review, 2 Davis, *Administrative Law Treatise,* § 16.05 at 444-49 (1958); 2 Am. Jur. 2d *Administrative Law* § 447 at 256 (1962), and cases cited. *See also* Code (1957, 1971 Repl. Vol.) Art. 41, § 254 which imposes this requirement on those agencies of the State which are subject to our Administrative Procedure Act.

> *Judgment affirmed, costs to be*
> *paid by appellant.*