## HUGH J. COURTNEY v. BOARD OF TRUSTEES OF THE MARYLAND STATE RETIREMENT SYSTEMS

[No. 141, September Term, 1978.]

*Decided June 26, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH, COLE and DAVIDSON, JJ.

*John F. Calabrese,* with whom were *DePaul, Willoner & Kenkel, P.A.,* on the brief, for appellant.

*Steven P. Resnick, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court. DAVIDSON, J., dissents and filed a dissenting opinion at page 365 *infra.*

We granted certiorari in this case to consider the claim of Hugh J. Courtney that he was erroneously denied "accidental" disability retirement benefits for mental incapacitation suffered as a result of unusual pressures, strains and conditions of his employment as a librarian with the Prince George's County library system.

Courtney, a member of the Maryland Teachers Retirement System, sought the retirement allowance under the provisions of Maryland Code (1978 Repl. Vol.), Art. 73B, § 86 (4a),[1] which authorize the payment of an "accidental disability retirement benefit" to a member who:

> "has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without willful negligence on his part . . ., provided that the medical board shall certify that such member is mentally or physically incapacitated for the further performance of duty . . . ."

In filing his claim for accidental disability benefits, Courtney described the "accident" which caused his mental incapacitation in these words:

> "A two year period of being severely understaffed, plus a lack of administrative concern for my problems led to severe frustration and depression

---

1. When the claim was initially filed, the statute was codified as Code (1975 Repl. Vol.), Art. 77, § 195 (4a).

concerning my ability to properly function as an Area Branch Librarian and culminated in my having a nervous breakdown."

The Medical Board, after considering the evidence submitted to it, including the report of Courtney's psychiatrist, Dr. Richard Kastner, certified that Courtney was mentally incapacitated for the further performance of duty "due to schizophrenia-paranoid type." It concluded that he be retired with ordinary disability benefits, rather than accidental disability benefits, because his mental incapacitation was not caused "by the accident reported."

Courtney appealed to the Board of Trustees of the Maryland Retirement System and a full evidentiary hearing was held on November 7, 1977. The evidence before the Board revealed that Courtney began working for the Prince George's County library system in 1966. He was promoted in 1969 to the position of Area Branch Librarian at Bowie, with responsibility for satellite branches in Laurel and Marlboro. In this capacity, he was faced with numerous problems, including chronic understaffing, repeated and serious incidents of vandalism, inadequate security, and malfunctioning and unsafe equipment. Courtney's efforts to ameliorate these problems through administrative channels were unsuccessful. As a result, he assumed responsibilities beyond his job description for maintenance and security, worked hours far in excess of his 37½ hour contractual work week, and strained his relations with the library administration by constantly calling attention to these problems. Mental, as well as physical stress and strain ensued, as evidenced by a co-worker's observation that Courtney's "health deteriorated, he lost a lot of weight, [and] he became more agitated."

On September 3, 1975, Courtney had a conversation with the area branch librarian from Carrolton concerning understaffing in their respective maintenance departments. Finding the substance of that conversation distressing, Courtney returned to work in Bowie where, after ruminating about work-related problems, "he became severely frustrated

and depressed." That afternoon, he suffered a nervous breakdown, evidenced by his pallor, speech incoherency, loud belching, and other peculiar actions. He was hospitalized that evening and remained in the hospital for four days. On September 23, he began psychiatric treatment under Dr. Richard Kastner and has since been unable to work.

The evidence disclosed that Courtney had a history of chronic mental disorder. In July of 1963, while serving in the Navy, Courtney was diagnosed as suffering from paranoid schizophrenia. He was hospitalized for 11 months while receiving treatment for this illness and was subsequently discharged from the Navy with a 100 percent medical disability rating. In 1969, five years after his discharge, his disability was reduced to 30 percent, a disability rating for which he received partial disability payments from the Navy throughout his full-time employment as a librarian.

Dr. Norman Freeman, Jr., a member of the Medical Board, testified that Courtney's disability was not caused by an accident. He noted Courtney's earlier extensive hospitalization for the same psychosis in 1964. He said that "the nature of the disease we are talking about is a recurrent disease, a disease which is often in remission and exacerbation, and he had this in 1963. Now we are having a recurrence of it in 1975."

Dr. Kastner testified on behalf of Courtney. He said that there was no correlation between the 1963 incidence of paranoid schizophrenia and Courtney's 1975 mental breakdown. He said that the 1963 illness "either had burnt itself out or was extremely quiescent." He concurred, however, with Dr. Freeman's earlier testimony "that no doctor knows the cause of schizophrenia or paranoia." He admitted that Courtney's mental incapacitation "may have been attributable elsewhere." Dr. Kastner nevertheless concluded that the psychosis resulted from an "admixture of [Courtney's] job, the stresses that he had, the mode or method in which he dealt with it, and then the rather unusual interaction between the organization and [Courtney]."

The Board determined from the evidence that Courtney was not entitled to accidental disability retirement benefits.

It noted that Courtney had been receiving "a partial disability allowance from the Navy for paranoia-schizophrenia since 1963," and that the Navy considered Courtney "partially disabled from paranoia-schizophrenia before and during the period in which his present disability arose." A majority of the five-member Board concluded that the disability was "attributable to a preexisting condition of paranoia-schizophrenia." Acknowledging that "the conditions under which Mr. Courtney worked contributed to his emotional distress," the Board nevertheless held that "there is no evidence that he suffered an accidental injury of a character causing the mental condition of which he complains." A majority of the Board thus determined "that Mr. Courtney's incapacity for duty is not the natural and proximate result of an accident occurring at some definite time and place while in the actual performance of duty." Two members of the majority also concurred on the ground that "a mental disability which is not the result of a physical injury is not an accident within the meaning of . . . [the statute]." Two members of the Board dissented; they were of the opinion "that the conditions under which claimant worked constituted an unusual condition of employment which caused an accident."

Courtney filed an appeal to the Circuit Court for Prince George's County, as authorized by the Administrative Procedure Act, Code (1978 Repl. Vol.), Art. 41, § 255. In affirming the Board, the court stated:

> "Notwithstanding Dr. Kastner's testimony and evidence in the record revealing conditions of employment which might cause great stress and strain (i.e. understaffing, poor security, vandalism, inadequate facilities at the library), the Court after examining all the testimony and documents thereto finds that there was substantial evidence to support the Board's decision that Mr. Courtney's present mental incapacity characterized as paranoia-schizophrenia is not a natural and proximate cause of an accident occurring at some definite time and place in the actual performance of duty [as required

by the statute], but rather the Petitioner's mental incapacity was the proximate result of his pre-existing mental illness."

The court further concluded that its finding that the Board's decision was based upon substantial evidence made it unnecessary to reach the question of whether an award of benefits for mental disability under the statute must be limited to situations involving physical injury. Nevertheless, after reviewing the relevant Maryland case law, the court found that the two concurring members did not commit an error of law "in ruling that the Petitioner could not receive accidental benefits because his mental disability was not accompanied by physical injury."

Courtney's appeal to the Court of Special Appeals was based on his contention that the Board's finding that his mental incapacitation was attributable to a preexisting psychiatric illness was not supported by the medical testimony in the record and, secondly, that his mental disability was a direct and proximate result of the unusual strain and conditions of his employment at the Bowie library. Additionally, Courtney urged reversal of the view held by the concurring members of the Board which would require accidental disability claimants alleging mental incapacity to show some manifestation of physical injury. Our grant of certiorari was prior to decision by the Court of Special Appeals.

Our review of the decision of the Board of Trustees, like the circuit court's, is based on the test set forth in the Administrative Procedure Act, specifically § 255 (g) of Art. 41, which states:

> "(g) *Affirmance, remand, reversal or modification of decision.* — The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

\* \* \*

"(5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

\* \* \*

"(8) Arbitrary or capricious."

As Judge Eldridge so recently said for the Court in *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 390 A. 2d 1119 (1978), "[s]ubstantial evidence," as the test for reviewing factual findings of administrative agencies, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We summarized the applicable law in *Bulluck,* with an extensive citation of authorities, as follows:

"The scope of review 'is limited "to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." ' [Citations omitted.]

"In applying the substantial evidence test, we have emphasized that a 'court should [not] substitute its judgment for the *expertise* of those persons who constitute the administrative agency from which the appeal is taken.' *Bernstein v. Real Estate Comm.,* 221 Md. 221, 230, 156 A. 2d 657 (1959), *appeal dismissed,* 363 U. S. 419, 80 S. Ct. 1257, 4 L.Ed.2d 1515 (1960). We also must review the agency's decision in the light most favorable to the agency, since 'decisions of administrative agencies are prima facie correct,' *Hoyt v. Police Comm'r,* 279 Md. 74, 88-89, 367 A. 2d 924 (1977), and 'carry with them the presumption of validity,' *Dickinson-Tidewater, Inc. v. Supervisor, supra,* 273 Md. at 256, *Heaps v. Cobb,* 185 Md. 372, 378, 45 A. 2d 73 (1945). Furthermore, not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences. [Citations omitted.]"

283 Md. at 512-13.

*Accord, Annapolis v. Annap. Waterfront Co.,* 284 Md. 383, 396 A. 2d 1080 (1979).

As indicated, the statute predicates the award of disability benefits upon total and permanent incapacitation, whether mental or physical, resulting from an accident occurring in the performance of duty. Cases involving statutes authorizing the payment of accidental disability retirement benefits, as here, have been analogized to cases arising under the workmen's compensation law which require that an injury, to be compensable, must be accidental. *See Minch v. Board of Trustees,* 273 Md. 167, 327 A. 2d 889 (1974); *Baker v. Board of Trustees,* 269 Md. 740, 309 A. 2d 768 (1973); *Board of Trustees v. Grandinetti,* 269 Md. 733, 309 A. 2d 764 (1973). Thus, an injury, to be accidental under the retirement statute, must result " 'from some unusual strain or exertion of the employee or some unusual condition in the employment.' " *Board of Trustees v. Grandinetti, supra,* 269 Md. at 739, *quoting from Kelly-Springfield Tire Co. v. Daniels,* 199 Md. 156, 161, 85 A. 2d 795 (1952). Furthermore, an accidental injury " 'does not include unexpected results not produced by accidental causes.' " *Baker v. Board of Trustees, supra,* 269 Md. at 745, quoting from *Vaughan v. Mayor & City Council of Baltimore,* 229 Md. 547, 550-51, 184 A. 2d 842 (1962). An unexpected result (the incapacitating injury) attributable to a preexisting condition is not, therefore, an accidental injury.

In applying a comparable statutory provision in *Baker,* we affirmed the denial of accidental disability benefits to a marine engineer who claimed that an incapacitating heart attack he suffered was the result of striking his head on an overhead pipe in the course of his employment on a fireboat. In that case, we concluded "there was substantial evidence . . . that Baker had a predisposition toward this sort of attack and that his head injury was not the direct cause of the myocardial infarction." *Id.* at 744. See *Vaughan v. Mayor & City Council of Baltimore,* 229 Md. 547, 184 A. 2d 842 (1962); *Williams v. McCardell,* 198 Md. 320, 84 A. 2d 52 (1951) (both upholding denial of accidental disability benefits to firemen with history of arteriosclerotic heart disease who suffered heart attacks while on duty); *Severn v. Baltimore City,* 230

Md. 160, 186 A. 2d 199 (1962) (upholding denial of accidental death benefits where the deceased had preexisting coronary artery disease); and *Stancliff v. H.B. Davis Co.,* 208 Md. 191, 117 A. 2d 577 (1955) (death of an employee was not accidental when his preexisting cardiac condition was worsened by exposure to fumes).

In the present case, the Board premised its denial of accidental disability benefits upon its finding that Courtney had not suffered an "accidental injury" since his "nervous breakdown and mental disability [were] attributable to a preexisting condition of paranoia-schizophrenia." Courtney argues that the record does not contain such relevant evidence as a reasonable mind would accept as adequate to support the Board's findings. He maintains that Dr. Kastner offered the sole credible medical explanation of his breakdown, namely that his prior condition of paranoid schizophrenia had been in remission since 1964, that his 1975 disability was a new and separate illness, and that the 1975 breakdown was causally connected to the stress and strain he experienced in the performance of his duties as area branch librarian. However, as the Board noted, there was countervailing medical testimony that paranoid schizophrenia is a "recurrent disease, a disease which is often in remission and exacerbation" and that Courtney was suffering "a recurrence of it in 1975." Dr. Kastner lent support to Dr. Freeman's testimony by noting that "there are people that have recurrent episodes" of paranoid schizophrenia and that "no doctor knows the cause of schizophrenia or paranoia." This statement served to undermine the force of Dr. Kastner's prior assertion that Courtney's 1975 mental incapacity was "caused" by his employment.

In essence then, the Board was confronted with conflicting expert medical opinion. It was the function of the Board to weigh the testimony and to judge its reliability. *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73 (1945). Under the circumstances here, it cannot be said that "the Board was arbitrary, capricious or unreasonable in refusing on conflicting medical opinion, to accept the views favorable to

[Courtney's] contentions." *Severn v. Baltimore City,* 230 Md. 160, 168, 186 A. 2d 199 (1962).

We conclude from all the testimony that there was substantial evidence from which the Board could have reasonably found, as it did, that Courtney had a preexisting psychotic tendency and that the conditions of his employment did not cause his mental disability.[2]

*Judgment affirmed; costs to be paid*
*by appellant.*

*Davidson, J., dissenting:*

My colleagues have determined that a majority of the Board of Trustees of the Maryland State Teachers' Retirement System (Board) found as a fact that appellant Hugh J. Courtney's disability was attributable to a pre-existing condition and, from that fact, concluded that his disability had not been caused by an accidental injury. My colleagues have further determined that there is substantial evidence to support the majority's finding that the disability was attributable to a pre-existing condition. Accordingly, they have affirmed. If I were persuaded that a majority of the Board did find as a fact that the appellant's disability was attributable to a pre-existing condition, I too would affirm. But, based on the record before me, I am unable to determine whether a majority of the Board made such a factual finding. Accordingly, I respectfully dissent.

The record here shows that on 17 March 1978, a document was issued, the relevant portions of which read as follows:

*"DECISION OF THE BOARD OF TRUSTEES*

. . .

*The majority . . . find that claimant's nervous breakdown and mental disability are attributable to a pre-existing condition of paranoia-schizophrenia.*

---

2. In view of our disposition of the case, we express no view concerning the conclusion of law formulated by the two concurring members of the Board requiring accidental disability claimants alleging mental incapacity to show some manifestation of physical injury.

"Although the Board finds that the conditions under which Mr. Courtney worked contributed to his emotional distress, there is no evidence that he suffered an accidental injury of a character causing the mental condition of which he complains.

"Based upon the foregoing findings, the *majority conclude that Mr. Courtney's incapacity for duty is not the natural and proximate result of an accident* occurring at some definite time and place while in the actual performance of duty. *It is therefore ordered that Hugh J. Courtney be denied accidental disability benefits and that he be retired for ordinary disability.* (Emphasis added.)

/s/ _____
David W. Hornbeck, Chairman

CONCURRING OPINION:

"*We concur in the result reached above but are of the opinion that a mental disability which is not the result of a physical injury is not an accident within the meaning of Article 77, Section 194 (4A).* Since Mr. Courtney offered no evidence indicating that his mental breakdown resulted from a physical injury occurring in the course of his employment, *we would deny accidental disability as a matter of law.* (Emphasis added.)

/s/ _____
Louis L. Goldstein, Vice-Chairman

/s/ _____
William S. James, Treasurer

DISSENTING OPINION:

"We dissent from the majority view. It is our opinion that the conditions under which claimant worked constituted an unusual condition of

employment which caused an accident. *We would award accidental disability benefits.* (Emphasis added.)

/s/ _____
Mary D. McNally, Trustee

/s/ _____
Peter A. Whittaker, Trustee"

The text of one section of the "Decision of the Board of Trustees" indicates that the "majority" found that the appellant's disability was attributable to a pre-existing condition. That section, however, is signed not by a majority of the five-member board, but rather by only one member, Chairman Hornbeck. His assertion that the "majority" found as a fact that the appellant's disability was attributable to a pre-existing condition does not, in this case, establish conclusively that the "majority" did make such a factual finding.

Here two of the Board members not only failed to sign the section of the decision signed by Chairman Hornbeck, but also, in a separate signed concurring opinion, contradicted Chairman Hornbeck's assertion that they had found as a fact that the appellant's disability was attributable to a pre-existing condition. The plain language of their concurring opinion establishes that they agreed with Chairman Hornbeck that the appellant should be denied accidental disability benefits but for a reason different from, and not in addition to, that expressed by the Chairman. That language also shows that the sole reason these concurring members concluded that the appellant's disability had not been caused by an accident was their view that, as a matter of law, a mental disability which is not the result of a physical injury is not an accident. Under the present circumstances, the basis of the Board's decision is unclear.

It is an elementary principle of administrative law that ordinarily a court cannot review an administrative agency's action unless the grounds upon which that administrative

agency acted are clearly disclosed and adequately sustained. In *Securities and Exchange Commission v. Chenery Corp.,* 318 U. S. 80, 94-95, 63 S. Ct. 454, 462-63 (1943), Justice Frankfurter, speaking for the Court, said:

"[T]he courts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review. *If the action rests upon an administrative determination — an exercise of judgment in an area which Congress has entrusted to the agency — of course it must not be set aside because the reviewing court might have made a different determination were it empowered to do so. But if the action is based upon a determination of law as to which the reviewing authority of the courts does come into play, an order may not stand if the agency has misconceived the law. In either event the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.* 'The administrative process will best be vindicated by clarity in its exercise.' Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 197, 61 S.Ct. 845, 853, 85 L.Ed. 1271, 133 A.L.R. 1217. What was said in that case is equally applicable here: 'We do not intend to enter the province that belongs to the Board, nor do we do so. All we ask of the Board is to give clear indication that it has exercised the discretion with which Congress has empowered it. This is to affirm most emphatically the authority of the Board.' In finding that the Commission's order cannot be sustained, we are not imposing any trammels on its powers. We are not enforcing formal requirements. We are not suggesting that the Commission must justify its exercise of administrative discretion in any particular manner or with artistic refinement. We are not sticking in the bark of words. *We merely hold that an administrative order cannot be upheld unless the*

*grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.* (Emphasis added.)

"The cause should therefore be remanded to the Court of Appeals with directions to remand to the Commission for such further proceedings, not inconsistent with this opinion, as may be appropriate." (Citation omitted.)

Here it is impossible to determine whether the Board's conclusion that the appellant's mental disability was not caused by an accidental injury rested upon an administrative finding of fact that the appellant's disability was attributable to a pre-existing condition or was based upon a determination of law that a mental disability which is not the result of a physical injury is not an accident. Accordingly, pursuant to Maryland Rule 871, I would, for the purposes of justice, remand the case without affirmance or reversal, to the Circuit Court for Prince George's County with directions to remand to the Board for clarification of the basis of its decision. *Redden v. Montgomery County,* 270 Md. 668, 684-86, 313 A. 2d 481, 490-91 (1974).